DARIN W. SNYDER (SB #136003)
dsnyder@omm.com
LUANN L. SIMMONS (SB #203526)
lsimmons@omm.com
ALEXANDER B. PARKER (SB #264705)
aparker@omm.com
JIANING (JENNY) LIU (SB #305568)
jianingliu@omm.com
O'MELVENY & MYERS, LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Attorneys for Defendant
NIANTIC, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LOCATION BASED SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NIANTIC, INC.,<br><br>Defendant. | **Case No. 5:17-cv-04413-NC**<br><br>**DEFENDANT NIANTIC, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:  November 1, 2017<br>Time:  1:00 PM<br>Courtroom: 7, 4th Floor<br>Judge: Honorable Nathanael Cousins |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

      A.   Procedural Background ............................................................................. 2

      B.   Summary Of The Asserted Patents And Claims ....................................... 3

      C.   Related Litigation ..................................................................................... 4

III.  APPLICABLE LAW ........................................................................................... 5

IV.   ARGUMENT ....................................................................................................... 6

      A.   The Asserted Patents Are Directed To The Abstract Idea Of Displaying
           Information About Locations On A Map .................................................. 6

           1.   The Asserted Independent Claims Of The '996 Patent Are Abstract ......... 7

           2.   The Asserted Independent Claims Of The '648 And '114 Patents
                Are Abstract .................................................................................. 13

           3.   The Asserted Independent Claims Of The '610 Patent Are Abstract ....... 15

           4.   The Asserted Patents Preempt The Field ................................................. 19

      B.   The Asserted Patents Do Not Disclose An "Inventive Concept" ........................ 19

      C.   The Asserted Dependent Claims Are Abstract And Lack Any "Inventive
           Concept" .................................................................................................. 21

V.    CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Servs. v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) .................................................................................. 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) .................................................................................. 1, 5, 17, 22

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) .................................................................................. 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 5

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
   No. C 12-04182-WHA, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013) ....................... 6

*Concaten, Inc. v. Ameritrack Fleet Solutions, LLC*,
   131 F. Supp. 3d 1166 (D. Colo. 2015) *aff'd* 669 F. App'x 571 (Fed. Cir. 2016) ............. 11, 20

*Content Aggregation Solutions LLC v. Blu Products, Inc.*,
   No. 3:16-cv-00527-BEN-KSC, 2016 WL 6995490 (S.D. Cal. Nov. 29, 2016) ........................ 6

*Content Extraction and Transmission LLC v. Wells Fargo Bank, NA*,
   776 F.3d 1343 (Fed. Cir. 2014) .................................................................................. 19

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) .................................................................................. 12

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) .................................................................................. 21

*Elec. Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ........................................................................... passim

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*,
   128 F. Supp. 3d 103 (D.D.C. 2015) *aff'd* 653 F. App'x 764 (D.C. Cir. 2016) ................. 10, 20

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) .................................................................................... 5

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008),
   *aff'd*, *Bilski v. Kappos*, 130 S. Ct. 3218 (U.S. 2010) ........................................ 5, 19

*Intellectual Ventures I LLC v. Capital One Bank (NA)*,
   792 F.3d 1363 (Fed. Cir. 2015) .................................................................................. 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)..................................................................... 9, 19, 20

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)............................................................................. 6

*Location Based Services, LLC v. AT&T Mobility LLC*,
    2:17-cv-00569-JRG (E.D. Tex.) .............................................................................. 5

*Location Based Services, LLC v. Cellco Partnership d/b/a Verizon Wireless*,
    2:17-cv-00573-JRG (E.D. Tex.) .............................................................................. 5

*Location Based Services, LLC v. Garmin International, Inc.*,
    2:17-cv-00133-JRG-RSP (E.D. Tex.) ..................................................................... 4

*Location Based Services, LLC v. MITAC Digital Corp.*,
    2:17-cv-00134-JRG-RSP (E.D. Tex.) ..................................................................... 4

*Location Based Services, LLC v. RM Acquisition, LLC d/b/a Rand McNally*,
    2:17-cv-00135-JRG-RSP (E.D. Tex.) ............................................................. 4, 8, 14

*Location Based Services, LLC. v. RM Acquisition, LLC d/b/a Rand McNally*
    1:12-cv-6610 (N.D. Ill.)................................................................................... 5, 8

*Location Based Services, LLC v. Sprint Spectrum L.P.*,
    2:17-cv-00567-JRG (E.D. Tex.) .............................................................................. 4

*Location Based Services, LLC v. Trimble Inc.*,
    2:17-cv-00410-JRG-RSP (E.D. Tex.) ..................................................................... 4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)...................................................................................... 10, 19

*Move, Inc. v. Real Estate Alliance, Ltd.*,
    221 F. Supp. 3d 1149 (C.D. Cal. 2016) .......................................................... 10, 20

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    No. C 12-1233-EMC, 2012 WL 3985118 n.1 (N.D. Cal. Sept. 11, 2012), *aff'd*,
    788 F.3d 1359 (Fed. Cir. 2015)........................................................................... 12

*Open Text S.A. v. Alfresco Software Ltd.*,
    No. 3:13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal., Sept. 19, 2014) ................... 6

*OpenTV, Inc. v. Apple Inc.*,
    No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015)..................... 11

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>**Page(s)**</u>

3

*Rothschild Location Technologies v. Geotab USA, Inc.,*
   No. 6:15-cv-682, 2016 WL 3584195, at *7 (E.D. Tex. Jan. 4, 2016)...................................... 22

4

*Peschke Map Techs. LLC v. Rouse Properties Inc.,*
   168 F. Supp. 3d 881 (E.D. Va. 2016)................................................................................ 10, 20

5

6

*Planet Bingo, LLC v. VKGS LLC,*
   576 F. App'x 1005 (Fed. Cir. 2014) ...................................................................................... 17

7

8

*Twilio, Inc. v. Telesign Corp.,*
   No. 16-CV-06925-LHK, 2017 WL 1374759 (N.D. Cal. Apr. 17, 2017)........................ 5, 6, 19

9

*Versata Development Group, Inc. v. SAP Am., Inc.,*
   793 F.3d 1306 (Fed. Cir. 2015)............................................................................................ 21

10

11

*Williamson v. Citrix Online, LLC,*
   212 F. Supp. 3d 887 (C.D. Cal. 2016) *aff'd* 683 F. App'x 956 (Fed Cir. 2017)...................... 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

1

## NOTICE OF MOTION

2    PLEASE TAKE NOTICE that on November 1, 2017, at 1:00, or as soon thereafter as the

3    matter may be heard, before the Honorable Nathanael Cousins, Magistrate Judge of the United

4    States District Court for the Northern District of California, Defendant Niantic, Inc. ("Niantic")

5    will present its Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil

6    Procedure 12(b)(6).

7    Niantic respectfully moves the Court to dismiss this litigation with prejudice.  As set forth

8    more fully in the accompanying Memorandum of Points and Authorities, the patents asserted by

9    Plaintiff Location Based Services, LLC. ("LBS") are invalid under 35 U.S.C. § 101 ("§ 101")

10   because they claim patent-ineligible subject matter.  Niantic's Motion is based on the

11   accompanying Memorandum of Points and Authorities, LBS's Amended Complaint, other

12   material which may properly come before the Court at or before the hearing on this Motion, and

13   any oral argument the Court deems appropriate.

## MEMORANDUM OF POINTS AND AUTHORITIES

15   I.    INTRODUCTION

16   LBS's four Asserted Patents[1] are directed to nothing more than the ancient and abstract

17   idea of displaying information about locations on a map and, accordingly, are unpatentable under

18   binding Supreme Court and Federal Circuit precedent.  The landmark Supreme Court decision in

19   *Alice Corp. Pty. Ltd. v. CLS Bank Int'l* held that patents are invalid under § 101 if they (1) are

20   directed to an abstract idea and (2) do not transform the nature of the claim with an inventive

21   concept.  134 S. Ct. 2347 (2014).  LBS's Asserted Patents are invalid under both steps.

22   LBS's Asserted Patents are invalid under step 1 of the *Alice* framework because they

23   claim the abstract idea of displaying information about locations on a map, which is unpatentable

24   subject matter under § 101.  The methods claimed by the Asserted Patents could be—and have

25   been—performed with pen and paper for hundreds, if not thousands, of years.

26

27   [1] LBS asserts infringement of four patents: U.S. Patent Nos. 7,860,648 ("the '648 Patent");
8,392,114 ("the '114 Patent"); 8,768,610 ("the '610 Patent"); and 7,522,996 ("the '996 Patent")
28   (collectively, the "Asserted Patents").  ECF 30, Amended Complaint.

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

The Asserted Patents are likewise invalid under step 2 of the *Alice* framework because they do not disclose any inventive concepts; rather, they generically describe implementing the abstract idea of displaying information about locations on a map on a generic computer system using generic computer functionality.  Since the *Alice* decision, courts have consistently ruled that claiming the implementation of an abstract idea on a generic computer system is not inventive and is insufficient to transform an abstract idea into patentable subject matter.

**II.     FACTUAL BACKGROUND**

   **A.     Procedural Background**

Niantic is a software development company that focuses on augmented reality mobile games—games that are played on users' mobile phones based on the users' location and activity in the real world.  Niantic is best known for developing the Pokémon GO game.  In Pokémon GO, players find and catch creatures—the titular Pokémon—by walking around the real world, which moves their in-game avatar.  The game software displays a Map View showing the area around the player, as well as Pokémon that the player can try to catch.  The Map View also displays other locations, such as PokéStops, where the player can collect digital, in-game items, and Pokémon gyms, where the player can battle the Pokémon of rival teams through the game software.

LBS filed this litigation on May 9, 2017 in the Eastern District of Texas, originally alleging that Niantic infringes certain claims of the '996 Patent.  ECF 1.  On a joint motion, the case was transferred to the Northern District of California and was docketed in this District on August 8, 2017.

On August 20, 2017, LBS filed the Amended Complaint at issue in this Motion.  ECF 30. The Amended Complaint continues to assert the '996 Patent and also asserts infringement of the '648 Patent, the '114 Patent, and the '610 Patent.

LBS alleges that Pokémon GO infringes the Asserted Patents because Pokémon GO displays information about locations in the game world, such as PokéStops and Pokémon gyms, on a map.  *E.g.*, ECF 30 ¶¶ 10, 28, 93.

### B.     Summary of the Asserted Patents and Claims

The Asserted Patents are all titled "Map Display System and Method" and are directed to "a computer system and methods related to a map display."  *See* '996, '114, '648, '610 Patents at Abstract.  All four patents share a common specification, identify the same named inventors, and were previously assigned to The Invention Science Fund I, LLC, a subsidiary of the patent licensing company Intellectual Ventures.  LBS apparently acquired some rights to the Asserted Patents in December 2016, and soon thereafter began asserting them in litigation.

LBS's amended complaint asserts the following claims from each of the Asserted Patents (independent claims are bolded and in a larger font) (ECF 30 ¶¶ 27, 41, 50, 60, 69, 83, 92):

| Patent No. | Asserted Method Claims | Asserted Apparatus Claims |
|---|---|---|
| 7,522,996 | **1**, 2, 3, 5, 7, 8, 9, 12, 15, | **19**, 22, 23, 24, 25, 28 |
| 7,860,648 | **1**, 2, 3, 4, 6, 7, | **9**, 11, 13, 14, 15 |
| 8,392,114 | **1**, 4, 5, 6, 7, 13, 17 | |
| 8,768,610 | | **1**[2], 5, **7**, **8**, 9, 10, 11, 13, 14, 18, 21, 26 |

The asserted independent method claim of the '996 Patent discloses a method for *providing* map-related data that comprises:

- "receiving a request for a map display illustrating information relative to one or more locations";

- "determining a status associated with at least one of the locations on the map display, the status being a function of one or more location interaction rules associated with at least one of the locations";

- "generating a signal" to indicate that status on the "map display."

'996 Patent, Claim 1.  LBS also asserts independent claim 19 of the '996 Patent.  Claim 19 is an apparatus claim that recites a "computer program product" that contains instructions for performing the steps described in claim 1.

The asserted independent method claims of the '114 and '648 Patents are analogous to claim 1 of the '996 Patent but recite a method for *receiving* the map on a display device

---

[2] LBS does not assert independent claim 1 of the '610 Patent. But LBS does assert claim 5 of that patent, which depends from claim 1.

*NIANTIC'S MOTION TO DISMISS*
5:17-CV-04413-NC

comprising:

- "transmitting a request for the map including one or more locations"

- "receiving the map" in which at least one of the locations is "associated with one or more location interaction rules"

- "interacting" with a monitoring device to alter the map on the display device "as a function of the location interaction rules" and, in the case of the '114 Patent, "user interaction rules."

'114 Patent, Claim 1, and '648 Patent, Claim 1.  LBS also asserts independent claim 9 of the '648 Patent.  As with claim 19 of the '996 Patent, claim 9 is simply an apparatus claim that recites a "computer program product" that performs the method of claim 1.

The '610 Patent discloses only system or apparatus claims, all of which are analogous to the method claims in the '996, '114, and '648 Patents.  Claim 1 of the '610 Patent, which is not asserted but is the parent claim for asserted claim 5, is similar to claim 1 of the '996 Patent.  Claim 1 of the '610 Patent recites a "computer system" comprising a "data store" holding "interaction rules" and a "status module" that determines "a status" associated with a location based on "location interaction rules."  Claims 7 and 8 of the '610 Patent mirror the independent method claims of the '114 and '648 Patents, but they are drafted in the form of a "system" containing "circuitry" for performing the steps recited in those method claims.

## C.    Related Litigation

This case is one of several past and pending suits involving the Asserted Patents.  Since February 2017, LBS has filed patent infringement complaints, mostly in the Eastern District of Texas, against manufacturers of GPS devices and navigation software, such as Garmin, Rand McNally, Trimble, and MITAC, and against telecommunications companies, such as Sprint, Verizon, and AT&T.[3]  In each of these suits, LBS has asserted one or more of the Asserted

---

[3] LBS filed most of its patent infringement suits in the Eastern District of Texas, including: *Location Based Services, LLC v. Garmin International, Inc.*, 2:17-cv-00133-JRG-RSP; *Location Based Services, LLC v. MITAC Digital Corp.*, 2:17-cv-00134-JRG-RSP; *Location Based Services, LLC v. RM Acquisition, LLC d/b/a Rand McNally*, 2:17-cv-00135-JRG-RSP; *Location Based Services, LLC v. Trimble Inc.*, 2:17-cv-00410-JRG-RSP; *Location Based Services, LLC v. Sprint Spectrum L.P.*, 2:17-cv-00567-JRG; *Location Based Services, LLC v. AT&T Mobility LLC*,

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

1    Patents.

2    III.   **APPLICABLE LAW**

3         A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for

4    failure to state a claim if the complaint lacks a cognizable legal theory, or if the complaint pleads

5    insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

6    (2007); *see also Twilio, Inc. v. Telesign Corp.*, No. 16-CV-06925-LHK, 2017 WL 1374759, at *6

7    (N.D. Cal. Apr. 17, 2017).

8         In *Alice*, the Supreme Court adopted a two-step framework for determining whether a

9    claim is patent-ineligible and therefore invalid under § 101: (1) the first step of the *Alice* inquiry

10   is to determine if the claims are directed to one of the three patent-ineligible categories, *i.e.* laws

11   of nature, natural phenomena, or an abstract idea, and (2) if so, then step two of the *Alice* inquiry

12   is to determine whether any claim elements provide an "inventive concept" that transforms the

13   nature of the claim into patent-eligible subject matter. 134 S. Ct. at 2355. The mere recitation of

14   a generic computer implementation of an abstract idea does not qualify as an "inventive concept"

15   in the *Alice* frame work. The Federal Circuit has "repeatedly held" that the invocation of "off-

16   the-shelf, conventional computer, network, and display technology" is "not even arguably

17   inventive." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). A

18   patent is therefore invalid if it is directed to an abstract idea, fails to disclose any "inventive

19   concept," and merely claims implementing the abstract idea through a generic computer system.

20        "Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold

21   inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd*, *Bilski v.*

22   *Kappos*, 130 S. Ct. 3218, 3225 (U.S. 2010). Therefore, patentability under § 101 is suitable for

23   early resolution through a Rule 12 motion to dismiss when the claims are plainly directed to an

24   abstract idea. *See, e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097-98 (Fed.

25   Cir. 2016); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1344-45 (Fed. Cir.

26   2:17-cv-00569-JRG; and *Location Based Services, LLC v. Cellco Partnership d/b/a Verizon*

27   *Wireless*, 2:17-cv-00573-JRG. LBS's suit against Garmin was transferred to the Central District of California, Case No. 2:17-cv-05755. LBS dismissed its first litigation against Rand McNally

28   and recently filed a new case in the Northern District of Illinois, Case No. 1:17-cv-6610.

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

2015).  Courts in this district frequently find patents invalid under § 101 pursuant to Rule 12(b)(6) motions to dismiss.  *See, e.g.*, *Twilio*, 2017 WL 1374759, at *6; *Open Text S.A. v. Alfresco Software Ltd.*, No. 3:13-cv-04843-JD, 2014 WL 4684429, at *1 (N.D. Cal. Sept. 19, 2014); *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-cv-01482-WHA, 2013 WL 245026, at *1 (N.D. Cal. Jan. 22, 2013).

## IV.   ARGUMENT

### A.   The Asserted Patents Are Directed to the Abstract Idea of Displaying Information About Locations on A Map

The first step of the *Alice* test "look[s] at the 'focus' of the claims and their 'character as a whole' to determine whether the claims are 'drawn to the concept of' an abstract idea."  *Content Aggregation Solutions LLC v. Blu Prods., Inc.*, No. 3:16-cv-00527-BEN-KSC, 2016 WL 6995490, at *3 (S.D. Cal. Nov. 29, 2016).  To obtain a "full understanding of the basic character of the claimed subject matter," courts may consider what the specification describes as the claimed invention's "innovation over the prior art" and its "'most important aspect.'"  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015).

Here, the claims and specification demonstrate that the "basic character" of the Asserted Patents is the display of information about locations on a map.  The "Technical Field" section of the Asserted Patents' shared specification does not even attempt to identify any specific field to which the claimed invention relates, instead reciting only that "[t]he present application relates generally to maps."  *E.g.,* '996 Patent at 1:5.  And the specification then acknowledges that a general purpose computer is an exemplary system for implementing the embodiments described in the specification.  *Id.* at 2:62-65.

The Asserted Patents' basic character of displaying information about locations on a map is an abstract idea.  Courts routinely reject as abstract claims relating to analysis and display of information.  The Federal Circuit has explained that "we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category.  And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information,

without more (such as identifying a particular tool for presentation) is abstract as an ancillary part of such collection and analysis." *Elec. Power Grp.*, 830 F.3d at 1354 (collecting cases; omitting citations).

Further, the shared specification of the Asserted Patents does not even attempt to offer any discussion of the claimed invention's "innovation over the prior art" or "most important aspect." Typically, a patent specification contains a "Background of the Invention" section that describes existing technology (i.e., the prior art) and its shortcomings. The specification then usually describes the claimed invention and its benefits over the existing technology. The Asserted Patents, in contrast, fail to describe either the prior art or any putative innovation over the prior art offered by the claimed invention. The Asserted Patents also fail to describe any alleged important aspect of the claimed invention. Indeed, the word "invention" appears only twice in the specifications of the Asserted Patents, in a boilerplate paragraph at the very end of the specification that provides no information about the claimed invention or why it is important or innovative. *See* '996 Patent at 16:27-17:13.

### 1. The Asserted Independent Claims of the '996 Patent Are Abstract

LBS asserts two independent claims from the '996 Patent, claims 1 and 19. Claim 1 is representative:

> 1. A method for providing map-related data, the method comprising:
>
> *[a]* receiving a request for a map display illustrating information relative to one or more locations in a predetermined area;
>
> *[b]* determining a status associated with at least one of the locations on the map display, the status being a function of one or more location interaction rules associated with at least one of the locations on the map display; and
>
> *[c]* generating a signal to indicate on the map display the status regarding a permitted traverse or visit that is allowed under an applicable location interaction rule associated with the at least one of the locations on the map display.

'996 Patent, Claim 1.

This claim language demonstrates that the steps of Claim 1 are directed to nothing more than the abstract idea of "indicating" (i.e., displaying) the "status" (i.e., information) about

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

locations on a map. Specifically, claim 1 recites determining a "status" associated with a location on the map, where the "status" is a function of a "location interaction rule" and relates to "a permitted traverse or visit" and then "indicating" that status on the map. The "status" associated with a location is simply information about the location. While the claim states that the "status" is a function of "one or more location interaction rules," the "location interaction rules" are not defined or limited by the claims or specification in any way. The specification provides, for example, that "interaction rules can mean rules for interacting, either rules attached to a location or rules attached to a user." '996 Patent at 7:51-53.

If there were any doubt, examining the dependent claims of the '996 Patent confirms that the claimed "status" can be essentially any information about the location. Claim 15 recites that the "status" can be a "progress indication." Claim 16 recites that the "status" can be an indication of the location the user is to visit next. Claim 17 recites that the "status" can be traffic conditions.

Moreover, LBS's allegations demonstrate that LBS reads the claimed location "status" as capable of being any type of information about the location. In this case, LBS asserts claim 1 against Pokémon GO and alleges that the displayed "status" is any type of information about locations displayed by the game, including "gym affiliation," "level," or "Pokémon presence." ECF 30 ¶ 93. LBS has also asserted claim 1 of the '996 Patent against companies that provide navigation software, such as Rand McNally. In its suit against Rand McNally, LBS asserts that the claimed "status" includes "traffic status," "accidents," "whether or not the road is open or closed," and "the type of road such as toll or free." *Location Based Services, LLC. v. RM Acquisition, LLC d/b/a Rand McNally* (N.D. Ill. No. 1:12-cv-6610) ("*LBS v. Rand McNally*"), ECF 1 ¶ 127. Thus, by LBS's reading of these claims, the claimed "status" of a location on the map is simply any type of information about the location.

The recitation of "rules" is merely a consequence of applying the claimed basic human activity to computer technology. "Rules" can refer to essentially any type of analysis performed by a computer. Using undefined "rules" to determine the "status" of a location is thus technical jargon for claiming the idea of analyzing information about a location. As the Federal Circuit has held, however, claims directed to "analyzing information by steps people go through in their

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

minds" are patent-ineligible because they are "essentially mental processes within the abstract-idea category." *Elec. Power Grp.*, 830 F.3d at 1354. A human could just as easily apply "rules" in his or her head to determine the "status" of a location. Just as in *Electric Power Group*, the claims here are directed to "analyzing information" (here, using rules) and "displaying the results" (here, on a map) and accordingly are directed to an abstract idea. *Id.* Because Claim 1 is directed to nothing more than the abstract idea of displaying these "statuses" on a map, it is abstract under step one of the *Alice* framework.

The Federal Circuit's analogous decision in *Intellectual Ventures I LLC v. Symantec Corp.* strongly supports this conclusion. 838 F.3d 1307 (Fed. Cir. 2016) ("*Symantec*"). There, the Federal Circuit considered a method claim that is remarkably similar to claim 1 of the '996 Patent. The claim at issue in *Symantec* also comprised three method steps:

> A method for identifying characteristics of data files, comprising:
>
> *[a]* receiving, on a processing system, file content identifiers for data files from a plurality of file content identifier generator agents, each agent provided on a source system and creating file content IDs using a mathematical algorithm, via a network;
>
> *[b]* determining, on the processing system, whether each received content identifier matches a characteristic of other identifiers; and
>
> *[c]* outputting, to at least one of the source systems responsive to a request from said source system, an indication of the characteristic of the data file based on said step of determining.

*Id.* at 1313. Each step of the *Symantec* claim corresponds to the similarly labeled step in claim 1 of the '996 Patent. Step [a] of both recites "receiving" information or a request for information. Step [b] of both recites "determining" some information. And step [c] of both recites "outputting" or "generating a signal to indicate" the result of the "determining" step. The Federal Circuit explained that "[c]haracterizing email based on a known list of identifiers" is abstract and that the "patent merely applies a well-known idea using generic computers to the particular technological environment of the Internet," and the court accordingly held the claim at issue in *Symantec* to be abstract. *Id.* at 1314. Applying this logic, claim 1 of the '996 Patent must also be abstract. It merely applies the well-known idea of displaying information on a map to a technological environment using steps that parallel the steps at issue in *Symantec*.

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

In *Move, Inc. v. Real Estate Alliance, Ltd.*, a district court invalidated as abstract another patent similar to the '996 Patent.  221 F. Supp. 3d 1149, 1162 (C.D. Cal. 2016).  The claim at issue there recited a number of steps, the last three of which are listed here:[4]

> *[a]* selecting a second area having boundaries within the zoomed first area

> *[b]* identifying available real estate properties within the database which are located within the second area

> *[c]* displaying the second area and a plurality of points within the second area, each point representing the appropriate geographic location of an available real estate property

*Id.* at 1154.  Again, these three steps all correspond to the similarly labeled steps of claim 1 of the '996 Patent.  Step [a] of both recites "receiving" a request for a map of an area or "selecting" an area.  Step [b] of both recites determining a status associated with a location; the *Move, Inc.* patent determines whether the location is available for sale.  And step [c] of both recites displaying that status on a map.  The *Move, Inc.* court found the patent was directed to the abstract idea of "collecting and organizing information about available real estate properties and displaying this information on a digital map."  The '996 Patent is even more abstract; while the *Move, Inc.* patent was limited to information regarding available real estate properties, the '996 Patent more broadly relates to displaying almost any information on a map.

Numerous other courts have also invalidated patents related to displaying information about locations on a map as patent-ineligible under *Alice*.  One court described displaying information about locations on a map to be a "'well-understood, routine, conventional activity'" and found the patent at issue to be directed to an abstract idea.  *Peschke Map Techs. LLC v. Rouse Props. Inc.*, 168 F. Supp. 3d 881, 889 (E.D. Va. 2016) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012)); *see also Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 112 (D.D.C. 2015) *aff'd* 653 F. App'x 764 (D.C. Cir. 2016) (steps of patent are "essentially variations of activities humans have performed for

---

[4] For clarity, the steps are provided out of order here.  In the *Move, Inc.* patent, step [c] comes before step [b].  But this revised ordering is more logical: step [b] is a precursor to step [c], because the available real estate properties cannot be displayed in step [c] before they are identified in step [b].

thousands of years using paper maps and other reference works, and are thus abstract ideas");

*Concaten, Inc. v. Ameritrack Fleet Solutions, LLC*, 131 F.Supp.3d 1166, 1174 (D. Colo. 2015)

*aff'd* 669 F. App'x 571 (Fed. Cir. 2016) (claims describing "the idea of receiving information

from snow plows, processing the information, and sending an 'operator instruction' and a map

back to the snow plow operator" were directed to an abstract idea).

The pen-and-paper test further confirms the abstract nature of claim 1 of the '996 Patent.

But for the rote recitation of generic computer-age terms, this claim recites an abstract idea that

has been performed with pen and paper since time immemorial. *See OpenTV, Inc. v. Apple Inc.*,

No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) ("[t]he 'pen and paper

test' confirms that the [Asserted Patents] claims are drawn to an abstract idea."). The following

analogy provides an example of how the claimed method could be performed using pen and

paper.

| '996 Claim 1 Method Step | Analogy |
|---|---|
| A method for providing map-related data, the method comprising: | A method for a hotel concierge to provide information to hotel customers. |
| *[a]* receiving a request for a map display illustrating information relative to one or more locations in a predetermined area; | A couple staying at a hotel ask a hotel concierge for a map showing nearby sushi restaurants. |
| *[b]* determining a status associated with at least one of the locations on the map display, the status being a function of one or more location interaction rules associated with at least one of the locations on the map display; and | The concierge considers nearby restaurants in his head and determines which to recommend, based on the rule that the couple is looking for a sushi restaurant. |
| *[c]* generating a signal to indicate on the map display the status regarding a permitted traverse or visit that is allowed under an applicable location interaction rule associated with the at least one of the locations on the map display | The concierge makes marks on a map that show where three nearby sushi restaurants are located. |

The above analysis of claim 1 applies with equal force to independent apparatus claim 19

of the '996 Patent. Claim 19 recites a "computer program product" containing "one or more

instructions" for performing the method steps of claim 1. "Computer program product" and

1    similar types of claims, such as "computer-readable storage medium" claims, that parallel an

2    abstract method claim are also abstract.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d

3    1366, 1375 (Fed. Cir. 2011) ("the basic character of a process claim drawn to an abstract idea is

4    not changed by claiming only its performance by computers, or by claiming the process embodied

5    in program instructions on a computer readable medium"); *see also Williamson v. Citrix Online,*

6    *LLC*, 212 F. Supp. 3d 887, 906 (C.D. Cal. 2016) (a dependent claim reciting the method of claim

7    1 "wherein computer instructions for performing the method steps are encoded on a computer-

8    readable medium" added "nothing significant to the claimed abstract idea, as [it] merely

9    specif[ies] a generic and conventional technological environment in which the invention is to be

10   used") *aff'd* 683 F. App'x 956 (Fed Cir. 2017); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C 12-

11   1233-EMC, 2012 WL 3985118, at *5 n.1 (N.D. Cal. Sept. 11, 2012) ("The Court may examine

12   the claims of the '713 patent together despite the fact that one independent claim is a method

13   claim and the other describes a computer-readable medium claim.") *aff'd,* 788 F.3d 1359 (Fed.

14   Cir. 2015).

15          Applying these precedents here, claim 19 is directed to an abstract idea because it claims a

16   computer program containing instructions that perform a method that is substantively

17   indistinguishable from claim 1.  The only difference between claims 1 and 19 is that in claim 19

18   the displayed "status" is the result of "user interaction rules" in addition to the "location

19   interaction rules" that are also recited in claim 1.  But as with the "location interaction rules," the

20   claimed "user interaction rules" can be any type of analysis of any information associated with an

21   individual.  The specification explains that the "user interaction rules" are analogous to the

22   "location interaction rules," but relate to analysis of information about a user instead of a

23   location: "user interaction rules can be ***any user specific rule*** that applies to a user and not to a

24   location." '996 Patent at 8:4-6 (emphasis added).  The specification provides numerous examples

25   that confirm that the user interaction rules encompass essentially any type of analysis of

26   information relating to a user; according to the specification, user interaction rules can include all

27   of the following: (1) the amount of time a user can spend at a location (*id*. at 14:5-8), (2) the

28   number of times a user can visit a location (*id.* at 14:5-8), (3) any analysis "of the amount a user

1   has paid" (*id.* at 8:2-4), and (4) disallowing any interaction between a person and a location or

2   locations (*id.* at 14:37-43).  Like the "location interaction rules," the "user interaction rules" are

3   directed to an abstract idea because they are directed to the idea of "analyzing information."

4   *Elec. Power Grp.*, 830 F.3d at 1354.

5           2.      **The Asserted Independent Claims of the '648 and '114 Patents Are**
                    **Abstract**
6

7           LBS asserts two independent claims of the '648 Patent, claims 1 and 9.  Claim 1 describes

8   "altering" a map based on one or more location interaction rules:

9                   1. A method for a display device to receive a map through a
                    predefined area, the method comprising:
10
                    *[a]* transmitting a request for the map including one or more
11                  locations, the request including an identifier associated with a user
                    of the display device;
12
                    *[b]* receiving the map at the display device, the map including one
13                  or more locations, at least one location of the one or more locations
                    associated with one or more location interaction rules verifiable via
14                  one or more monitoring devices; and

15                  *[c]* interacting with the one or more monitoring devices to alter the
                    map on the display device as a function of the one or more location
16                  interaction rules.

17   Claim 9 is an apparatus claim with a "computer program product" that performs the steps of

18   claim 1 and is, therefore, functionally identical to claim 1.

19          Claims 1 and 9 of the '648 Patent are directed to the same abstract idea as claim 1 of the

20   '996 Patent—the display of information about locations on a map.  Like claim 1 of the '996

21   Patent, claims 1 and 9 of the '648 Patent recite a map that includes locations associated with

22   "location interaction rules."  The '648 Patent adds that these rules are "verifiable via one or more

23   monitoring devices."

24          The "monitoring devices," as was the case with the "location interaction rules," are simply

25   the result of applying computer technology to an activity that humans have done for ages.  The

26   "monitoring devices" are any device that can provide information about the locations and/or

27   users, such as the number of times a user has visited a particular location or how much time the

28   user has spent at that location.  The claim's recitation of "monitoring devices" is simply technical

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

1  jargon used for claiming the abstract idea of collecting information for analysis.  Again, Federal

2  Circuit precedent confirms that generic "monitoring devices" are abstract.  In *Electric Power*

3  *Group*, the Federal Circuit explained that "we have treated collecting information, including

4  when limited to particular content (which does not change its character as information), as within

5  the realm of abstract ideas."  830 F.3d at 1354 (collecting cases).  The monitoring devices do

6  nothing more than collect information for analysis, and accordingly they are abstract.

7      Similarly, the addition that the location interaction rules are "verifiable" via one or more

8  monitoring devices fails to render the claims non-abstract.  Neither the claims nor the

9  specification explain what it means to "verify" a rule or for a rule to be "verifiable," and the

10  specification fails to provide or even describe an algorithm or technical solution for verifying

11  rules.  As described above, a "monitoring device" can be any device that collects information.

12  Essentially any analysis of such information could be called a "rule" that is "verifiable" using the

13  "monitoring device."  Just as in *Electric Power Group*, these claims are directed to the "process

14  of gathering and analyzing information . . . then displaying the results, and not any particular

15  assertedly inventive technology for performing those functions.  They are therefore directed to an

16  abstract idea."  830 F.3d at 1354.

17      As with the '996 Patent, LBS's allegations help illustrate the abstract nature of claims 1

18  and 9 of the '648 Patent.  Here, LBS asserts claim 1 against Pokémon GO and alleges that the

19  location interaction rules include the "number of players required for a single or multi-person

20  gym or raid battle" and "gym affiliation and allowed user interaction."  ECF 30 ¶ 28.  LBS asserts

21  that "monitoring devices" are used because "the map is altered based on raid presence, time left

22  for raid, or gym affiliation through actions taken by other users."  *Id.*  LBS has also asserted claim

23  1 of the '648 Patent against companies that provide navigation software, such as Rand McNally.

24  There, LBS asserts that the location interaction rules include "rules related to the maximum and

25  average speed of traffic" and that the "monitoring devices" are "other GPS devices."  *LBS v.*

26  *Rand McNally*, ECF 1 ¶ 71.  Again, LBS's own reading demonstrates that the claims are directed

27  to the abstract idea of displaying information on a map and can accordingly be applied to

28  displaying information about "gym battles" between Pokémon or to displaying traffic

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

1   information.

2        The pen-and-paper test further illustrates that claims 1 and 9 of the '648 Patent are

3   abstract.  As shown below using claim 1 as an example, these claims could be performed long

4   before the invention of computers using pen and paper.

| '648 Claim 1 Method Step | Analogy |
| --- | --- |
| A method for a display device to receive a map through a predefined area, the method comprising: | A method for a hotel concierge to provide information to hotel customers. |
| *[a]* transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device; | A couple staying at a hotel ask a hotel concierge for a map showing nearby parks to which they can easily walk. |
| *[b]* receiving the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and | The concierge provides a map to the couple showing the nearby vicinity, including several parks.  Some of the parks may be within walking distance, if the weather is not bad.  The concierge knows that he can verify whether a park is easy to walk to by checking the weather through his window. |
| *[c]* interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules. | The concierge looks out his window.  He then alters the map to show which of the parks are within walking distance. |

18        Claim 1 of the '114 Patent is essentially the same as claim 1 of the '648 Patent.  The only

19   difference is that claim 1 of the '114 Patent also recites "user interaction rules," similar to claim

20   19 of the '996 Patent.  As already discussed in connection with the '996 Patent, the "user

21   interaction rules," just like the location interaction rules, fail to render the claim non-abstract.

22              3.    **The Asserted Independent Claims of the '610 Patent Are Abstract**

23        The '610 Patent discloses only system claims, of which claims 1, 7, and 8 are

24   independent.  Like the independent apparatus claims in the '996 and '648 Patents, the systems

25   disclosed in the '610 Patent are nothing more than generic computer systems for implementing

26   the abstract idea of displaying location information on a map using the same methods already

27   discussed above.  LBS asserts claims 7 and 8 of the '610 Patent; it does not assert independent

28   claim 1, but it asserts claim 5 which depends from Claim 1.

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

Claims 7 and 8 of the '610 Patent parallel almost exactly method claim 1 of the '114 Patent and method claim 1 of the '648 Patent, respectively.  The only difference is that the claims of the '610 Patent are drafted in the form of "systems" comprising "circuitry" for performing the method steps.  For ease of review, the words in the '610 Patent claim that do not appear in the matching method claim of the '114 Patent or '648 Patent are bolded.

| '610 Claim 7 | '114 Claim 1 |
| --- | --- |
| **A system for receiving** a map through a predefined area **at a display device, the system** comprising: | A method for a display device to receive a map through a predefined area, the method comprising: |
| *[a]* **circuitry for** transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device; | *[a]* transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device; |
| *[b]* **circuitry for** receiving the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and | *[b]* receiving the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and |
| *[c]* **circuitry for** interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules as modified by one or more user interaction rules associated with the user of the display device. | *[c]* interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules as modified by one or more user interaction rules associated with the user of the display device. |

| '610 Claim 8 | '648 Claim 1 |
| --- | --- |
| **A system for receiving** a map through a predefined area **at a display device, the system** comprising: | A method for a display device to receive a map through a predefined area, the method comprising: |

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

| '610 Claim 8 | '648 Claim 1 |
|---|---|
| *[a]* **circuitry for** transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device; | *[a]* transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device; |
| *[b]* **circuitry for** receiving the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and | *[b]* receiving the map at the display device, the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and |
| *[c]* **circuitry for** interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules. | *[c]* interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules. |

When a system claim recites components used to perform the steps of an abstract method claim, courts have consistently found that the patentability of the system claim rises or falls with the method claim. *See Alice*, 134 S. Ct. at 2360 (invalidating system claims because "the system claims are no different from the method claims in substance"); *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (invalidating system claim after finding method claim unpatentable because both claims "require performance of the same basic process"); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014) ("[W]e agree with the district court that there is no meaningful distinction between the method and system claims ….").

Similarly, claim 1 of the '610 Patent parallels claim 1 of the '996 Patent but is drafted in the form of a "computer system," rather than a method.  Here, similar language in both claims is bolded:

5:17-CV-04413-NC

| '610 Claim 1 | '996 Claim 1 |
|---|---|
| A computer system comprising: | A method for providing map-related data, the method comprising: |
| *[a]* a processor; | |
| *[b]* a memory coupled to the processor; | |
| *[c]* a receiver coupled to the processor; and | |
| *[d]* a **map display** module coupled to the receiver and the memory, the map display module including | *[a]* receiving a request for a **map display** illustrating information relative to one or more locations in a predetermined area; |
| *[e]* a data store configurable to hold data related to one or more interaction rules associated with one or more locations in a predefined area and one or more identifiers; and | |
| *[f]* a status module configurable to **determine a status associated with at least one of the one or more locations on the map, the status being a function of one or more location interaction rules associated with the at least one of the locations**. | *[b]* **determining a status associated with at least one of the locations on the map display, the status being a function of one or more location interaction rules associated with at least one of the locations** on the map display; and |
| | *[c]* generating a signal to indicate on the map display the status regarding a permitted traverse or visit that is allowed under an applicable location interaction rule associated with the at least one of the locations on the map display |

Claim 1 of the '610 Patent is abstract for the same reasons that claim 1 of the '996 Patent is abstract: the claim is directed to the idea of determining any information (i.e., a "status") about a location based on undefined analysis (i.e., based on a "location interaction rule") for display on a map. Claim 1 of the '610 Patent also recites generic computer components: a processor, a memory, a receiver, a display, and a data store. Reciting generic computer components, however,

1    is not sufficient to render a claim non-abstract.  *Elec. Power Grp.*, 830 F.3d at 1355.

2                    4.    **The Asserted Patents Preempt the Field**

3            Further evidence that the Asserted Patents are not patent eligible comes from their

4    breadth.  The asserted claims are so abstract that they would preempt the field of displaying

5    information on a map.  *Twilio,* 2017 WL 1374759, at *11 ("[I]f a claim is so abstract so as to

6    'pre-empt use of [the claimed] approach in all fields, and would effectively grant a monopoly

7    over an abstract idea,' it is not patent eligible.") (quoting *Bilski v. Kappos*, 561 U.S. 593, 612

8    (2010)).  The Asserted Patents purport to claim any and all ways of displaying on a map

9    information about locations on that map, and hence they would preempt essentially the entire

10   field of displaying information on maps.  LBS's own actions reinforce this point: LBS has

11   accused of infringing the display of essentially any information—ranging all the way from

12   information about a fictional game world, such as information about the presence of a Pokémon

13   or a battle between two Pokémon, to information about the real world, such as information about

14   traffic conditions and road closures.  Because the Asserted Patents would preempt the display of

15   any information on a map and grant LBS a monopoly over that entire idea, they are not patent

16   eligible.

17       **B.    The Asserted Patents Do Not Disclose an "Inventive Concept"**

18           The Asserted Patents are not saved by the second step of the *Alice* framework because

19   they do not disclose an inventive concept that would overcome their abstractness.  Reciting

20   computer elements is deemed meaningful in the context of this analysis only when they involve

21   more than performance of "well-understood, routine, [and] conventional activities previously

22   known to the industry."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, NA*, 776

23   F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting *Mayo*, 566 U.S. at 73).  The Federal Circuit has

24   "repeatedly held" that the invocation of "off-the-shelf, conventional computer, network, and

25   display technology" is "not even arguably inventive."  *Elec. Power Grp.*, 830 F.3d at 1355.  In

26   other words, calling "for performance of the claimed information collection, analysis, and display

27   functions 'on a set of generic computer components' and display devices" is insufficient to supply

28

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

1   an inventive concept.  *Id.*  (*quoting Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,

2   827 F.3d 1341, 1350 (Fed. Cir. 2016)).  In *Symantec*, for example, the Federal Circuit found no

3   inventive concept in the claims of three patents directed to computer security because the claims

4   merely "use generic computers to perform generic computer functions"—such as "computer

5   network," sending and receiving email, and a "database of business rules."  838 F.3d at 1315-17.

6         The asserted claims here do not add an inventive concept.  The asserted claims recite, at

7   most, only generic components of generic computer systems, such as "display devices,"

8   "monitoring devices," "circuitry," and a "processor," performing their standard, conventional

9   functions to implement the claimed abstract idea.  These are all the type of "off-the-shelf,

10  conventional computer, network, and display technology" that the Federal Circuit has held is "not

11  even arguably inventive."  *Elec. Power Grp.*, 830 F.3d at 1355.  "Instructing one to 'apply' an

12  abstract idea and reciting no more than generic computer elements performing generic computer

13  tasks does not make an abstract idea patent-eligible."  *Intellectual Ventures I LLC v. Capital One

14  Bank (NA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015).  In *Symantec*, the Federal Circuit explained that

15  an inventive concept could include an "improved, particularized method of digital data

16  compression" or an improvement to "the way a computer stores and retrieves data in memory."

17  838 F.3d at 1315.  The claims here provide no such improvement on existing computer

18  technology.  Rather, the claims here describe standard computer functions such as "receiving,"

19  "determining," and outputting.  These "generic computer functions" are ineligible for patent

20  protection.  *Id.*

21        Indeed, numerous courts have held that patents directed to the use of conventional

22  computer equipment to display information on maps are not inventive.  *See Move, Inc.*, 221 F.

23  Supp. 3d at 1165 ("[i]t appears to us that the '989 Patent provides instructions to implement an

24  abstract idea with routine, conventional computing activity.") (quotation omitted); *Peschke*, 168

25  F. Supp. 3d at 890 ("application of the abstract idea does not make the computerized mapping

26  system patent-eligible"); *Encyclopaedia Britannica*, 128 F. Supp. 3d at 114 ("using 'indicators' to

27  show the position of a place on a map and indicate the availability of further information about

28  the place is not an inventive concept"); *Concaten*, 131 F. Supp. 3d at 1176 ("[t]he [asserted

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

patent] does not claim any improvement in the technology required to implement its steps of data collection and transmission."). The Asserted Patents likewise fail to provide an inventive concept.

Furthermore, in determining whether a computer-implemented patent imparts an innovative concept, the Federal Circuit often looks to whether the "claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of" computers. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). For example, in *DDR Holdings*, the patent specification identified a specific problem with prior art web-page systems and disclosed a solution to this problem. *Id.* at 1248. The Federal Circuit found that the claims "recite[d] a specific way" to solve this problem and thus held that the "claimed solution amounts to an inventive concept for resolving this particular Internet-centric problem." *Id.* at 1259.

Here, however, the Asserted Patents do not provide an inventive solution for solving a particular problem arising in the realm of computer-based map technology. To the contrary, the Asserted Patents' shared specification neither identifies any problem with the pre-existing technology nor explains what is purportedly innovative about the claimed inventions. Like the patent at issue in *Versata Development Group, Inc. v. SAP Am., Inc.*, the Asserted Patents "do not improve some existing technological process or solve some technological problem in conventional industry practice." 793 F.3d 1306, 1334 (Fed. Cir. 2015). Rather, the claims recite a "commonplace" method "being applied on a general purpose computer." *Id.* Accordingly, the Asserted Patents are not inventive.

**C. The Asserted Dependent Claims Are Abstract and Lack Any "Inventive Concept"**

The asserted dependent claims of the Asserted Patents do not change the abstract nature of the claims or disclose an inventive concept. Therefore, these dependent claims are likewise patent ineligible:

- '996 Patent, claim 2, 22; '648 Patent, claim 4; '610 Patent, claim 11: Each of these claims adds the step of "periodically updating the status." This does not change the abstract nature of the claims. The claims remain directed to displaying information

about locations on a map; the displayed information is merely updated on a periodic basis. Moreover, this addition does not disclose an inventive concept because updating is a routine, well-understood activity for general purpose computers. *Alice*, 134 S. Ct. 2359 ("[t]he same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are 'well-understood, routine, conventional activit[ies]' previously known in the industry").

- '996 Patent, claims 3, 5; '648 Patent, claim 15; '610 Patent, claim 26: Each of these claims discusses using a monitoring device to collect information. As explained above in connection with claim 1 of the '648 Patent, using "monitoring devices" to collect information for analysis is abstract.

- '996 Patent, claims 7, 24; '684 Patent, claim 15: These claims add the use of undefined "user interaction rules." As described above in connection with claim 19 of the '996 Patent, reciting undefined rules does not render the claims patent-eligible, because such rules are merely directed to the abstract idea of analyzing information.

- '996 Patent, claims 12, 23; '648 Patent, claims 6, 7, 13, 14; '114 Patent, claims 4, 5; '610 Patent, claim 5, 13, 14, 21: Each of these claims recites the use of generic network technology, such as using a wireless network or Bluetooth connection ('996 Patent, claim 12) or "instructions for wirelessly transmitting [a] request to a server over a network" ('648 Patent, claim 13). Using existing network technologies does not change that these claims are directed to the abstract idea of displaying information about locations on a map—that the information may be received over a network does not render the claims patent-eligible. Nor does using generic network technology disclose an inventive concept. "[T]wo computers communicating over a network is not inventive." *Rothschild Location Technologies v. Geotab USA, Inc.*, No. 6:15-cv-682, 2016 WL 3584195, at *7 (E.D. Tex. Jan. 4, 2016).

- '996 Patent, claims 8, 9, 25, 28; '648 Patent, claims 2, 3, 11; '114 Patent, claims 6, 7, 13, 17; '610 Patent, claims 9, 10, 18, 26: Each of these claims recites, at most, a minor variation on the asserted independent claims. For some of these claims, it is not clear whether the claim adds anything at all to the independent claim. For example, claim 28 of the '996 Patent recites "instructions" for "illustrating location detail" for a location. It is not clear what, if anything, this adds to claim 19 of the '996 Patent. Other claims specify minor variations. For example, claim 13 of the '996 Patent recites that the "status" is displayed by obfuscating a location on a map. And, finally, other claims recite particular types of interaction rules. For example, claim 8 of the '996 Patent recites rules limiting the visits to a location by time or number of visits. None of these minor variations changes the abstract nature of the asserted claims or discloses an inventive concept.

## V.   <u>CONCLUSION</u>

All of the Asserted Patents are directed to patent-ineligible subject matter. They fail *Alice* step 1 because they are directed to the abstract idea of displaying information about locations on a

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC

map.  And they fail Alice step 2 because they do not disclose an inventive concept.  Accordingly, Niantic respectfully requests that the Court find the asserted claims of the '996, '648, '114, and '610 Patents invalid under 35 U.S.C. § 101 and dismiss LBS's litigation with prejudice.

September 19, 2017

Respectfully submitted,

**O'MELVENY & MYERS LLP**

By   */s/ Darin W. Snyder*
Darin W. Snyder
Luann L. Simmons
Alexander B. Parker
Jianing (Jenny) Liu
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Attorneys for Defendant
NIANTIC, INC.

NIANTIC'S MOTION TO DISMISS
5:17-CV-04413-NC