UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCATION BASED SERVICES, LLC, | Case No. 17-cv-04413 NC |
| Plaintiff, | |
| v. | **ORDER GRANTING NIANTIC'S MOTION TO DISMISS WITH PREJUDICE UNDER *ALICE*** |
| NIANTIC, INC., | Re: Dkt. No. 35 |
| Defendant. | |

In the summer of 2016 it was common to see children and adults walking while craning their necks down to their phones in an effort to catch Pokémon or reach Pokéstops. This patent infringement suit goes to the core of the mapping technology used in Pokémon GO. Plaintiff Location Based Services, LLC (LBS) asserts 44 separate claims spread out over four map-related patents that are allegedly infringed at apparently every instant a user is playing Pokémon GO.

Defendant Niantic, Inc. is the developer of Pokémon GO, and Niantic moves to dismiss LBS's complaint for patent infringement under the two-part test developed in *Alice Corp. Pty. v. CLS Bank Int'l*, ——U.S. ——, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014). The two-part test considers first whether a patent is directed to an abstract idea, and if so, whether it discloses an inventive concept. If a patent is directed to an abstract idea and does not disclose an inventive concept, the patent is deemed invalid under 35 U.S.C. § 101.

Case No. 17-cv-04413 NC

Niantic's argument is that the four patents are directed to the abstract idea of collecting, analyzing, and displaying information on a map. Niantic further argues that the patents disclose no inventive concept sufficient to save the patents. For the reasons stated below, the Court finds that all four of the patents are directed to an abstract idea, and do not disclose an inventive concept. Thus, the asserted patents are invalid under 35 U.S.C. § 101, and the Court GRANTS Niantic's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties

LBS is a Texas limited liability company, which has a principal place of business in Texas. Dkt. No. 30 at 2. Niantic is a Delaware corporation with its principal place of business in California. *Id.*

#### 2. The Patents

The patents at issue are U.S. Patent Nos. 7,522,996 ('996 Patent), 7,860,648 ('648 Patent), 8,392,114 ('114 Patent), and 8,768,610 ('610 Patent). Dkt. No. 30 at 3-5. All of the patents are entitled "Map Display System and Method" and have the same inventors listed. Because the four patents share the same abstract, detailed description and figures, the Court will refer to the earliest-filed '996 Patent, unless otherwise noted. The '114 Patent is a continuation of the '648 Patent. '114 Patent at 1. The '648 Patent, in turn, is a continuation of the '996 Patent, which was the earliest-filed patent. '648 Patent at 1. The '610 Patent is a continuation in part of the '114 Patent. '610 Patent at 1.

The patents provide "a computer system and methods related to a map display." '996 Patent at 1. The patents' shared abstract provides that the method includes "receiving a request for a map" for one or more locations. *Id.* The method includes "determining a status associated with at least one of the" locations on the map. *Id.* That status is a "function of one or more location interaction rules associated with" one or more of the locations on the map. *Id.* Lastly, the method generates "a signal related to indicating on the map the status associated with the at least one of the one or more locations." *Id.*

The specification includes a diagram of an embodiment of the claimed subject matter:



FIGURE 3A

'996 Patent Fig. 3A. The patents do not explain how the invention is an improvement on the prior art or what problem it solves.

### 3. The Asserted Claims

LBS alleges Niantic infringes claims 1, 2, 3, 5, 8, 9, 12, 15, 19, 22, 23, 24, 25, and 28 of the '996 Patent, claims 1, 2, 4, 6, 7, 9, 10, 13, and 14 of the '648 Patent, claims 1, 4, 5, 6, 7, 13, and 17 of the '114 Patent, and claims 5, 7, 8, 9, 10, 11, 13, 14, 16, 17, 18, 21, 22, and 26 of the '610 Patent. Dkt. No. 30. Given the number of claims at issue in this case, the Court concentrates on the asserted independent claims in its discussion.[1] Claim 1

---

[1] This is proper for two reasons. First, the Court may select representative claims in determining patent-eligibility. *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1141-42, 1141 n.2 (N.D. Cal. 2017) (when parties do not designate representative claims, a court may itself do so even if the parties object). Second, the parties dedicate 90% of their briefs to the patents' independent claims, so this motion is really about the independent claims. Likewise, the Court need not consider the independent apparatus claims that merely implement the method or systems claims if the method or systems claims are not patent-eligible. *See Intellectual Ventures I LLC v. Capital One Bank (NA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015). However, the Court will discuss the independent apparatus claims below.

of the '996 Patent provides:

> A method for providing map-related data, the method comprising:
>
>> receiving a request for a map display illustrating information relative to one or more locations in a predetermined area;
>>
>> determining a status associated with at least one of the locations on the map display, the status being a function of one or more location interaction rules associated with at least one of the locations on the map display; and
>>
>> generating a signal to indicating on the map display the status regarding a permitted traverse or visit that is allowed under an applicable location interaction rule associated with the at least one of the locations on the map display.

'996 Patent at col. 17:14-28. Independent claim 19 is an apparatus claim and describes a computer program providing instructions for implementing claim 1. *Id*. at col. 19:4-19.

Independent claim 1 of the '648 Patent provides:

> A method for a display device to receive a map through a predefined area, the method comprising:
>
>> transmitting a request including one or more locations, the request including an identifier associated with a user of the display device;
>>
>> receiving the map at the display device, the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and
>>
>> interacting with one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules.

'648 Patent at col. 17:17-29. Independent claim 9 is an apparatus claim and describes a computer program providing instructions for implementing claim 1. *Id*. at col. 18:5-19.

LBS asserts independent claim 1 from the '114 Patent:

> A method for a display device to receive a map through a predefined area, the method comprising:
>
>> transmitting a request including one or more locations, the request including an identifier associated with a user of the display device;
>>
>> receiving the map including one or more locations; at least one location of the one or more locations associated with one

or more location interactions rules verifiable via one or more monitoring devices; and

interacting with one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules as modified by one or more user interaction rules associated with the user of the display device.

'114 Patent at col. 17:42-55. Lastly, LBS asserts independent systems claims of the '610 Patent. Independent claim 7 provides:

A system for receiving a map through a predefined area at a display device, the system comprising:

circuitry for transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device;

circuitry for receiving the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and

circuitry for interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules as modified by one or more user interaction rules associated with the user of the display device.

'610 Patent at col. 19:17-30. LBS also asserts independent claim 8, which provides:

A system for receiving a map through a predefined area at a display device, the system comprising:

circuitry for transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device;

circuitry for receiving the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and

circuitry for interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules.

*Id.* at col. 19:31-42.

A number of terms used in the abstract and claims are not defined in the Detailed Description. For instance, the patents give illustrations of "location interaction rules," such as the amount of time a user is allowed at a location, or the number of visits a user is

permitted for a location, but no definition. '996 Patent col. 8:35-36, 8:63-65. In its opposition to Niantic's motion, LBS defines "location interaction rule" as follows: "rules that can be correlated with data in a map display module." Dkt. No. 46-1 at 20 n.5.

The Court accepts this construction of "location interaction rule," as the Court must construe the term in light most favorable to the non-movant. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Similarly, there are only illustrations of "user interaction rules," such as "the amount of time a user has for all locations, or provide carte blanche for a user to expand on location interaction rules." '996 Patent at col. 8:65-67. LBS proffers a construction for "user interaction rule": "user specific rules stored in a data store that applies to a user and not a location." Dkt. No. 46-1 at 20 n.5. LBS requests "display" be construed as "electronic/ electronically display," and "determining a status" be construed as "using the location interaction rules in combination with the data stored in the map display module to determine a status." *Id*. Lastly, LBS requests that the phrase "interacting with the one or more monitoring devices" be construed as "periodically updating the status associated with the at least one or more locations when data is received from monitoring devices." *Id*. at 21 n.6. These terms will be construed as LBS requests.

### B. Procedural Background

LBS filed this action in the Eastern District of Texas. Dkt. No. 1. This case was then transferred to the Northern District of California. Dkt. No. 26. LBS filed an amended complaint, alleging direct and induced infringement of the '648, '114, '610, and '996 Patents. Dkt. No. 30. Niantic filed a motion to dismiss all four patents as invalid under 35 U.S.C. § 101. Dkt. No. 35. Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 29, 32.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a

Case No. 17-cv-04413 NC        6

motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Motions to Dismiss for Patent Invalidity Under 35 U.S.C. § 101

Title 35 U.S.C. § 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Yet § 101 "contains an implicit exception for '[l]aws of nature, natural phenomena, and abstract ideas.'" *Alice*, 134 S. Ct. at 2350. These exceptions are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012) (quotation marks omitted). But courts must be careful in construing these exceptions, lest the exception "swallow all of patent law." *Alice*, 134 S. Ct. at 2354. This is because "all inventions at some level embody, use, reflect, rest upon, or apply" the exceptions. *Mayo*, 566 U.S. at 71.

Niantic moves to dismiss on the grounds that the asserted patents fail to claim patent-eligible subject matter in light of *Alice*'s two-part test. This *Alice* framework proceeds as follows:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine

> whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an " 'inventive concept' "—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Alice*, 134 S. Ct. at 2355. (citations omitted; alterations in original). Determining patent eligibility under § 101 is a question of law. *In re Roslin Inst. (Edinburgh )*, 750 F.3d 1333, 1335 (Fed. Cir. 2014). "[A] district court may resolve the issue of patent eligibility under § 101 by way of a motion to dismiss." *X One, Inc. v. Uber Techs., Inc.*, 239 F. Supp. 3d 1174, 1183 (N.D. Cal. 2017) (citations omitted).

Though claim construction often occurs before resolving the issue of whether a patent claim is directed at patent-eligible subject matter, "'claim construction is not an inviolable prerequisite to a validity determination under § 101.'" *Id.* (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2013)). If the court has a "full understanding of the basic character of the claimed subject matter," the question of patent eligibility may properly be resolved on the pleadings. *Content Extraction*, 776 F.3d at 1349; *see also Cardpool, Inc. v. Plastic Jungle, Inc.*, No. 12-cv-04182 WHA, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (same), *aff'd*, 817 F.3d 1316 (Fed. Cir. 2016). Neither the Supreme Court nor the Federal Circuit has addressed what burden of proof applies when evaluating a lack of patent-eligible subject matter based on the pleadings. *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1079 (N.D. Cal. 2016), *aff'd*, 684 F. App'x 971 (Fed. Cir. 2017). Yet many courts "have concluded that a heightened burden of proof makes little sense in the context of a motion to dismiss," and have decided that regardless of the burden, a patent either is or is not patent-eligible. *Id.*

### 1. *Alice* Step 1

The Court next reviews the state of the law as to the first step of the *Alice* framework: whether the patent is directed to an abstract idea. It is vital to note, however, that there is no "bright line test" defining the contours of what constitutes an "abstract idea." *See Alice*, 134 S. Ct. at 2357. In addition, the Federal Circuit has not provided clear

guidance as to the level of abstractness at which a court may consider a claim, or how much of the claim limitations ought to be considered at *Alice* step 1 versus at step 2, which is discussed below. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). The case law on step 1 discloses that courts have come up with various tools for determining if a claim is directed to an abstract idea.

One tool is to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Courts also consider "whether the claims have an analogy to the brick-and-mortar world, such that they cover a 'fundamental practice long prevalent in our system.'" *Twilio*, 249 F. Supp. 3d at 1138 (quoting *Alice*, 134 S. Ct. at 2356) (collecting cases). Courts may consider if the asserted claims are directed to a process that may be performed mentally or on pen and paper. *Id*. at 1139 (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (invalidating claims that could be performed mentally or with pencil and paper) *and CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (same)).

Similarly, the Federal Circuit has considered abstract claims directed to the collection of information, even if the collection of information is limited to specific content. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citations omitted). Along the same lines, the Federal Circuit treats "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Id*. at 1354 (collecting cases). Thus, "the Federal Circuit has generally found claims abstract where they are directed to some combination of collecting information, analyzing information, and/or displaying the results of that analysis." *Twilio*, 249 F. Supp. 3d at 1137 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094-95 (Fed. Cir. 2016), *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016), and *Elec. Power Grp.*, 830 F.3d at 1354.

Lastly, with respect to a computer-related patent, courts consider whether the claims

"improve the functioning of the computer itself" or improve "an existing technological process," as compared to when "computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36.

### 2. *Alice* Step 2

*Alice*'s step 2 considers if the asserted claim's individual elements or ordered combination of elements "transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. Thus, at step 2 the Court searches for an "inventive concept" "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. (citation and brackets omitted). A claim directed to an abstract idea "must include 'additional features' to ensure 'that the claim is more than a drafting effort designed to monopolize the abstract idea.'" *Id*. at 2357 (quoting *Mayo*, Inc., 566 U.S. at 77) (brackets omitted). As relevant here, "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, and conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 134 S. Ct. at 2359) (brackets omitted). For this reason, the "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" if those components merely perform their "routine" functions. *In re TLI Commc'ns.*, 823 F.3d at 613. Lastly, narrowing the use of an abstract idea "'to a particular technological environment,'" such as the Internet, "is insufficient to save a claim." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2358).

Yet this is not to say that claims rooted in computer technology cannot be patent-eligible. Indeed, claims that are designed to "overcome a problem specifically arising in the realm of computer networks" may be "sufficiently transformative" to amount to an inventive concept. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014); *Twilio*, 249 F. Supp. 3d at 1140. Furthermore, a "non-conventional and non-generic arrangement of known, conventional pieces" can also provide an inventive

concept. *Bascom*, 827 F.3d at 1350 (in reciting a "specific, discrete implementation of the abstract idea of filtering [Internet] content," the patent-holder disclosed the inventive concept of installing "a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user.").

## III. DISCUSSION

The Court begins its discussion on the asserted patents' validity by considering whether each of the patents is directed to an abstract idea under step 1 of *Alice*. If the patents are found to be directed to an abstract idea, the Court continues its analysis to step 2 of *Alice* and determines whether each of the patents discloses an inventive concept such that the patents should not be deemed ineligible for patent protection.

### A. *Alice* Step 1 –Are the Asserted Claims Directed to an Abstract Idea?

In examining if the patents are directed to an abstract idea, the Court examines the asserted independent claims and considers (1) comparable case law, (2) whether the claims are directed to mental processes or the analysis and display of information, (3) Niantic's brick-and-mortar analogies, and (4) whether the patents improve computer functionality. Not all of the claims contain all four of these pieces of analysis. This is because the parties concentrated their efforts on claim 1 of the '996 and '648 Patents. Moreover, because claim 1 of the '114 Patent is almost identical to claim 1 of the '648 Patent, that claim rises and falls with the '648 Patent. Likewise, the '610 Patent rises and falls with both the '648 and '114 Patents. Thus, the discussion of those patents is far shorter.

#### 1. The '996 Patent is Abstract.

Claim 1 of the '996 Patent describes a "method for providing map-related data," which consists of: (1) receiving a request for information about locations on a map, (2) determining the status of locations on the map based on "location interaction rules," and (3) generating a signal to display on the map whether an individual user may travel across or to a location. '996 Patent at col. 17:14-29. Claim 19 describes a "computer program" containing instructions for performing claim 1. *Id.* at col. 19:4-19. LBS also asserts infringement of claims 2, 3, 5, 7, 8, 9, 12, 15, 22, 23, 24, 25, and 28.

United States District Court
Northern District of California

Niantic argues the indication of a "status" in the claim is abstract because a "status" can be any information about a location. Dkt. No. 35 at 13. For example, in the patent and the Amended Complaint, a "status" may be a "progress indication," "an indication of the location the user is to visit next," "traffic conditions," or "any type of information about locations displayed by [Pokémon GO], including 'gym affiliation,' 'level,' or 'Pokémon presence.'" *Id*. As to "rules," Niantic argues that "rules" refer to any type of analysis that can be performed by a computer. *Id*. Thus, using "rules" to determine a "status" is merely jargon for "the idea of analyzing information about a location." *Id*.

LBS objects to this characterization, arguing that the '996 Patent is directed to improving the technology of computerized mapping.[2] Dkt. No. 46-1 at 17. In support of its position, LBS defines "location interaction rule" as "rules that can be correlated with data in a map display module." Dkt. No. 46-1 at 20 n.5. A "display" is an "electronic/ electronically display." *Id*. at 20 n.5. "Determining a status" means "using the location interaction rules in combination with the data stored in the map display module to determine a status." *Id*. There is no definition of what a "rule" is.

The Court considers the case law. In *Intellectual Ventures I LLC v. Symantec Corp.*, the Federal Circuit found that a claim for filtering files or emails was an abstract idea. 838 F.3d 1307, 1313 (Fed. Cir. 2016). That claim described a method to receive files, characterize those files based on identifiers, and communicate the characterization. *Id*. The court found that sorting through mail to discard unwanted mailings was a long-standing practice, and that a list of characteristics a person would consider could be kept in their head. *Id*. at 1314. *Symantec* is an apt comparison here because claim 1 is directed to receiving information (receiving a request for a map), making a determination based on

---

[2] Neither party pays much attention to the dependent claims of the '996 Patent in the papers. Instead, the discussion of the dependent claims deals with whether the dependent claims support LBS's *Alice* step 2 argument. *See* Dkt. No. 46-1 at 27. Thus, in determining whether the patents are directed to an abstract idea, the Court will only consider the asserted independent claims of the four patents. At step 2 of *Alice*, the Court will consider whether the dependent claims of each patent disclose an inventive concept.

that data (determining the status of the location based on rules), and communicating the information (generating a signal to communicate information to the user). '996 Patent at col. 17:14-28.

Similarly, in *Move, Inc. v. Real Estate All. Ltd.*, a claim comprised steps for creating a database, representing information on a digital map, and allowing the user to select an area and zoom in for detail. 221 F. Supp. 3d 1149, 1162 (C.D. Cal. 2016). The court found this claim abstract because it relied on steps people go through in their minds, and that the collection of information, even "'when limited to a particular context,' is 'within the realm of abstract ideas.'" *Id.* (quoting *Elec. Power Grp.*, 830 F.3d at 1353). The Court also found the claim abstract because "using a map to display geographic information" was an old concept and not something to be monopolized. *Id.* (citing *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). This case is relevant because the elements of the '996 Patent are also directed to representing information about specific locations on a map, and displaying the information on the map in accordance with a user request.

In another mapping case, a court found abstract an invention assisting a user to locate a specific store "through the use of location and layout information." *Peschke Map Techs. LLC v. Rouse Properties Inc.*, 168 F. Supp. 3d 881, 885 (E.D. Va. 2016). The court found abstract a claim describing zooming in and out of geographic areas on maps because atlases had long served this purpose. *Id.* at 888. The court found that the claim merely applied this practice to a computer. *Id.* In a third mapping case, a court found abstract claims directed to "collecting, recognizing, and storing data to be easily found and retrieved." *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 111-12 (D.D.C. 2015), *aff'd*, 653 F. App'x 764 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 325, 196 L. Ed. 2d 220 (2016) (finding abstract claims reciting (1) "displaying a map on a display screen and changing the portion of the map being displayed in response to user input," (2) "allowing users to look up information about places marked on a map," and (3) "providing 'text search' and "text browse' features that allow a user to select a place and then display the portion of the map showing the location of that place"). These cases

suggest that patents directed to little more than assisting the user to find specific locations, and information about those locations on maps are abstract.

All of the above cases support Niantic's argument that claim 1 is abstract because they all deal either with mental processes or with analyzing, processing, and displaying information. The only case LBS cites to support its assertion that the claim 1 is not abstract is *InfoGation Corp. v. ZTE Corp.*, No. 16-cv-01901 H-JLB, 2017 WL 1135638 (S.D. Cal. Mar. 27, 2017).[3] There, the court found the claim for a mobile navigation system was "directed to improving an existing technological process, specifically how an online server communicates in real-time with a local mapping database within a mobile navigation system." *Id*. at *6. The system claim comprised (1) a navigation computer; (2) a wireless transceiver coupled to the navigation computer and connected to a server, the server calculated routes based on real-time information, and the routes were formatted using a natural language description; (3) a mapping database coupled to the computer reconstructing the route from the natural language; and (4) a display screen coupled to the computer for displaying the route. *Id*. at *3.

*InfoGation* does not help LBS. In *InfoGation*, the non-abstractness finding was based on the claim being directed to improving an existing technological process, and specifically pointing to the deficiencies in the prior art. *Id*. at *6. In contrast, nowhere in the '996 Patent[4] is there a discussion of the prior art or the patent's improvement thereof. LBS argues in the opposition that the '996 Patent is directed to improving the existing technological process of "how electronic maps display information related to a permitted traverse or visit through the use of location interaction rules and/or user interaction rules associated with locations on a map." Dkt. No. 46-1 at 20. This language is meaningless. Merely reciting claim language does not create an improvement to a technological process. As drafted, claim 1 encompasses any processing and displaying of desired mapping

---

[3] LBS's sur-reply still does not address any of Niantic's proffered cases on abstractness.
[4] No discussion of improving existing technological processes or the prior art appears in the '648, '114, or '610 Patents either. This is evident because the abstract, figures, and detailed descriptions for each of the patents are identical.

information based on location-based or user-based data.

Thus, the Court is persuaded that claim 1 is abstract. The claim is best described as a method for: (1) receiving a request for a specific map, (2) determining information about the requested locations based on rules associated with the location, and (3) communicating on the map whether a person may or may not enter the location based on those rules. The Court agrees with Niantic's assessment that the "rules" in practice are nothing more information that can be analyzed by a generic computer, or by the human brain. This claim is thus directed to the receipt, processing, and display of data.

At step 1 of *Alice*, the Court determines what the claim is directed to, and need not take into account LBS's jargon-filled proposed constructions of "location interaction rules" and "statuses." LBS artfully seeks to tie the patents to hardware, such as display devices and monitoring devices to make them more "concrete." But mechanically applying those alleged limitations at step 1 is not proper, because at step 1 of *Alice*, the Court's duty is to consider the claims' "focus," or "their character as a whole." *Enfish*, 822 F.3d at 1335; *see also In re TLI Commc'ns*, 823 F.3d at 611 ("While claim 17 requires concrete, tangible components such as 'a telephone unit' and a 'server,' the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner."). The Court considers such constructions at step 2. Claim 19 is also directed to an abstract idea because it applies generic computer components to claim 1.[5] Applying an abstract concept to a computer, without more, is insufficient.

Before going on, the Court briefly addresses the Amended Complaint, in which "location interaction rules" include the number of players required for gym or raid battle, raid presence and/or raid timer, gym affiliation, and allowed user interaction. Dkt. No. 30 at 24. These examples of "location interaction rules," which LBS defines as "rules that

---

[5] There is one other difference between claim 1 and 19: that when determining the information of the location, the "computer program product" not only considers information about the locations, but also information about the user of the program. However, this distinction is insufficient to take claim 19 out of abstractness.

United States District Court
Northern District of California

can be correlated with data," make evident how abstract and all-encompassing LBS's proffered definition is. A location interaction rule encompasses any data about a location. Likewise, the Court points to LBS's use of the undefined term "status," which indicates on the map "rules such as number of players required for a single or multi-person gym or raid battle, raid presence and/or raid timer, the gym affiliation, and allowed user interaction." *Id.* These allegations do not comport with LBS's narrower construction of what location interaction rules do. LBS's position in the opposition is that location interaction rules only cover whether a user is permitted to "traverse or visit" a location. Dkt. No. 46-1 at 19, 20. Even limiting the claim to permitted traverses or visits to locations, the claim would still be abstract because it encompasses a mental process and is directed to the analysis of information. *Elec. Power Grp.*, 830 F.3d at 1353, *In re TLI Commc'ns*, 823 F.3d at 613.

### b. Brick-and-Mortar Analogy

Niantic provides the following brick-and-mortar analogy for claim 1:

| '996 Claim 1 Method Step | Analogy |
| --- | --- |
| A method for providing map-related data, the method comprising: | A method for a hotel concierge to provide information to hotel customers. |
| *[a]* receiving a request for a map display illustrating information relative to one or more locations in a predetermined area; | A couple staying at a hotel ask a hotel concierge for a map showing nearby sushi restaurants. |
| *[b]* determining a status associated with at least one of the locations on the map display, the status being a function of one or more location interaction rules associated with at least one of the locations on the map display; and | The concierge considers nearby restaurants in his head and determines which to recommend, based on the rule that the couple is looking for a sushi restaurant. |
| *[c]* generating a signal to indicate on the map display the status regarding a permitted traverse or visit that is allowed under an applicable location interaction rule associated with the at least one of the locations on the map display | The concierge makes marks on a map that show where three nearby sushi restaurants are located. |

Dkt. No. 35 at 16. This analogy also applies to claim 19 as claim 1's apparatus claim. *Id*. LBS argues Niantic conflates user interaction rules (the couple wanting sushi) and location interaction rules (information about the location), that the traverse or visit is determined by

the location itself, and, with respect to claim 19, because there is no interaction between user and location interaction rules. Dkt. No. 46-1 at 18.

Niantic clarified its analogy, stating the concierge would take into account location information. Dkt. No. 47 at 10. Moreover, the Court is unconvinced that the location decides whether a user may enter a location; rather, by the plain language of the claim, the permitted visit is determined through data about the location. *See* '996 Patent Claim 1 ("generating a signal to indicate on the map display the status regarding a permitted traverse or visit that is allowed under an applicable location interaction rule associated with the at least one of the locations on the map display."). The language suggests that something *other* than the location determines whether a user may enter. In any event, this clause demonstrates the problem that runs rampant with respect to each of the asserted patents: the claim language is so vague as to include or exclude anything. As to claim 19, even assuming that an interaction between user and location interaction rules were required in the penultimate clause, all this means is that there must be some "correlation" between user and location "rules." For example, a user interaction rule could be data about a man (user) who travels in a wheelchair, and a "correlated" location interaction rule could be data of all of the wheelchair-accessible sushi restaurants in the area. Niantic's modified analogy of claim 1 is suitable, and adequately encompasses both claim 1 and 19.

### 2. The '648 Patent is Abstract.

Claim 1 describes a "method" for a display device to receive a map. The method consists of: (1) transmitting a request for a map, with the request identifying the device's user, (2) receiving the map at the display device, the map containing "rules" about the location that are "verifiable via one or more monitoring devices", and (3) interacting with monitoring devices to alter the map on the device based on "rules" regarding the location or locations. '648 Patent at col. 17:16-29. Independent claim 9 describes a "computer program" containing instructions for performing the steps in claim 1. *Id.* at col. 18:5-19. LBS also alleges infringement of claims 2, 3, 4, 6, 7, 10, 11, 13, 14, and 15.

### a. Construction of Terms & Comparison to Prior Case Law

Niantic argues the asserted claims are abstract. The difference between claim 1 of the '996 Patent and claim 1 of the '648 Patent is that claim 1 of the '648 Patent deals with *receiving* a map, whereas claim 1 of the '996 Patent *provides* the map. Also, claim 1 of the '648 Patent refers to receiving a map at a display device that is "verifiable via one or more monitoring devices." '648 Patent at col. 17:22-26.

Per Niantic, a "monitoring device" is any device that can provide information about locations or users, so LBS's invocation of a "monitoring device" is insufficient at step 1, as collecting information for analysis is an abstract idea. Dkt. No. 35 at 19; s*ee Elec. Power Grp.*, 830 F.3d at 1354 (finding abstract claims covering "a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions."). In addition, asserts Niantic, that "location interaction rules are 'verifiable' via one or more monitoring devices" does not render the claim non-abstract because verification is undefined. Dkt. No. 35 at 19.

LBS argues that claim 1 improves on an existing technological process. According to LBS, [t]he claimed monitoring devices do not simply collect information for analysis, but rather they interact with the display device to achieve the concrete purpose of the invention. That is to say, through the interaction with monitoring devices, the display device can display conditions that are verifiable by the monitoring devices to achieve the goal of the claimed invention." *Id*. But LBS's reasoning is circular. In LBS's own words, the '648 Patent is "directed to improving an existing technological process, specifically how electronic maps display information through the use of location interaction rules that are verifiable by monitoring devices and through interaction with the monitoring devices to alter a map on a display device." *Id*. In essence, the concrete purpose of the invention is improving on the invention it is claiming. That makes no sense, because a claim cannot improve on the technological process of the same claim. In contrast, the claim could possibly be deemed non-abstract if it improved on an existing technological process. That

is not the case here.

LBS also argues claim 1 is not abstract because the monitoring devices must be capable of interacting with the display device. Dkt. No. 46-1 at 21. But all these interactions entail is collecting data from the monitoring device. Dkt. No. 47 at 11. By LBS's own admission, the monitoring device merely issues information. *See* Dkt. No. 46-1 at 21 n.6 (defining interacting with a monitoring device as "periodically updating the status associated with the at least one of the one or more locations when data is received from the monitoring device"). It is the display device that "updates" so-called "statuses."

LBS likewise argues "verification" makes the claim concrete. Dkt. No. 46-1 at 21. Rather than define "verification," LBS provides an example.[6] *Id.* In reviewing that example, the Court finds it irrelevant with respect to the '648 Patent because neither claim 1 nor claim 9 mentions user interaction rules. The example deals with correlating user and location interaction rules to determine if a user interaction rule may nullify a violation to a location interaction rule. '648 Patent at col. 8:39-52. Indeed, there is no verification requirement in the claim at all—only that the location interaction rule be verifi*able*. Even if verification *was* required, claim 1 would still be abstract because verifying information falls into the abstract idea category. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (claim for verifying the validity of a credit card transaction invalid because the "steps can be performed in the human mind, or by a human using a pen and paper").

In reviewing the papers, the Court finds helpful *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*. 131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed. Cir.

---

[6] "Correlating the user interaction rules with the location interaction rules can include first determining if a location interaction rule . . . has been violated. If so, a user interaction rule correlated with the location interaction rule may nullify the violation. For example, if a deaf child is associated with a user interaction rule that allows twice as much time at each location, the location interaction rule violation is nullified. The data received by a monitoring device can verify whether the location interaction rule correlated with the user interaction rule for a user has been violated. Thus, a monitoring device can detect if a user has spent more time than that allowed under either a location interaction rule or a user interaction rule." '648 Patent at col. 8:39-52.

2016), *cert. denied*, 137 S. Ct. 1604, 197 L. Ed. 2d 709 (2017).  There, the claim described a method for (a) *receiving* information about snow vehicle locations, (b) *processing* the information to provide a map and instructions for the operator of the vehicle, and (c) *providing* the information to the operator.  *Id*. at 1170.  The court found that a claim seeking to cover receiving, processing, and transmitting data is an abstract idea.  *Id*. at 1174.  Though the patent provided instructions for possible events, it did not describe a new method for using the collected data.  *Id*.  While the claims are not identical, the Court finds apt the analysis rejecting the patent holder's claimed "optimization" of the allocation of resources.  The court found the claim abstract because it did not disclose any unknown method of optimization or any novel method for using the processed information.  *Id*.  So too here.  LBS asserts claim 1 is not abstract because it is directed to improving how "electronic maps display information through the use of location interaction rules that are verifiable by monitoring devices to alter a map on a display device."  Dkt. No. 46-1 at 22.  Like in *Concaten*, there is no concrete method disclosed for this improvement.  And as already noted, there is no disclosure of how this improves on existing technology.

Even so, at step 1 the Court need not consider all of the claim limitations.  *See e.g.*, *Ultramercial*, 772 F.3d at 715 (finding that although there were additional limitations in the claim, "the concept embodied by the majority of the limitations describes only" an abstract idea); *Enfish*, 822 F.3d at 1335 (at step 1, courts should consider the "focus" of the claims, "their character as a whole").  The Court does not consider the references to generic monitoring devices and displays to be central to claim 1.  Thus, claim 1 is directed to (1) transmitting a request for a map of certain locations, (2) receiving the map containing those locations and associated rules, and (3) interacting with other data sources to alter the map based on rules.  "Rules" are information that can be analyzed by a computer or the human brain.  This constitutes the abstract idea of transmitting, receiving, and updating information, as well as actions that may be performed mentally.  Claim 9 is merely the apparatus claim for claim 1, and it too is abstract.

### b. Brick-and-Mortar Analogy

Niantic presents the following brick-and-mortar analogy for claim 1:

| '648 Claim 1 Method Step | Analogy |
|---|---|
| A method for a display device to receive a map through a predefined area, the method comprising: | A method for a hotel concierge to provide information to hotel customers. |
| *[a]* transmitting a request for the map including one or more locations, the request including an identifier associated with a user of the display device; | A couple staying at a hotel ask a hotel concierge for a map showing nearby parks to which they can easily walk. |
| *[b]* receiving the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and | The concierge provides a map to the couple showing the nearby vicinity, including several parks. Some of the parks may be within walking distance, if the weather is not bad. The concierge knows that he can verify whether a park is easy to walk to by checking the weather through his window. |
| *[c]* interacting with the one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules. | The concierge looks out his window. He then alters the map to show which of the parks are within walking distance. |

Dkt. No. 35 at 20. Though Niantic's analogy does not precisely encompass claim 1, the Court can construct a brick-and-mortar analogy exemplifying claim 1: (1) a method for a concierge to provide mapping information to hotel customers, (2) a customer asks a concierge for a map showing parks that are within walking distance, (3) the concierge provides a map detailing information about specific parks within walking distance and telling the customer that she may ask passers-by if the concierge's information is still correct, and (4) the customer asks the passers-by if the information is still correct, and if it is not, the customer changes the information on the map. Based on the Detailed Description of the '648 Patent, it does not appear that the map changes itself; rather, the map "can *be* altered" based on information received from monitoring devices. '648 Patent at col. 12:38-61, 13:43-44, 13:47-49. Who or what alters the map is unclear, and the specification does not provide clarity. This lack of clarity requires that the Court not hinge its abstractness finding on a brick-and-mortar analogy as to the '648 Patent.

### 3. The '114 Patent is Abstract.

Claim 1 describes a "method" for a display device to receive a map. This method

consists of (1) transmitting a request for a specific location, with the request identifying the user of the device, (2) receiving the map at the display device, with the map containing "rules" about the location or locations, and (3) interacting with monitoring devices to alter the map on the device based on "rules" regarding the locations, as modified by information regarding the user of the device. '114 Patent at col. 17:42-55. LBS asserts Niantic infringes claims 4, 5, 6, 7, 13, and 17.

The parties discussed *Alice* step 1 for the '648 and '114 Patents in the same section. Based on those discussions, the Court concludes that if one of those patents is abstract, so too is the other. The Court finds this treatment is appropriate, as the language in claim 1 of both patents is nearly identical. The following table is instructive:

| '114 Patent Claim 1 | '648 Patent Claim 1 |
|---|---|
| A method for a display device to receive a map through a predefined area, the method comprising: | A method for a display device to receive a map through a predefined area, the method comprising: |
| transmitting a request including one or more locations, the request including an identifier associated with a user of the display device; | transmitting a request including one or more locations, the request including an identifier associated with a user of the display device; |
| receiving the map including one or more locations; at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and | receiving the map *at the display device*, the map including one or more locations, at least one location of the one or more locations associated with one or more location interaction rules verifiable via one or more monitoring devices; and |
| interacting with one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules *as modified by one or more user interaction rules associated with the user of the display device*. | interacting with one or more monitoring devices to alter the map on the display device as a function of the one or more location interaction rules. |

'114 Patent at col. 17:42-55, '648 Patent at col. 17:17-29 (differences emphasized).

The claim language in the last clause includes interactions with monitoring devices that are functions of location interaction rules modified by user interaction rules specific to

a user.  All this means is that the interaction with monitoring devices to alter the map not only takes into account rules about locations, but also rules about the person requesting the map.  The processing of additional information does not save claim 1.  Claim 1 is directed to (1) transmitting a request for a map of certain locations, (2) receiving the map containing those locations and associated rules, and (3) interacting with other data sources to alter the map based on those rules about locations, while taking into consideration rules about the user.[7]  Though this claim requires more information to be considered in the altering of the map, this difference does not render claim 1 non-abstract.

### 4.    The '610 Patent is Abstract.

Independent claim 7 describes a "system for receiving a map through a predefined area on a device" consisting of: (1) circuitry for transmitting a request for a map that includes an identifier for the device's user, (2) circuitry for receiving the map where at least one of the locations is associated with data that may be verified by a monitoring device, and (3) circuitry for interacting with monitoring devices that alter the map as a function of the data regarding locations, as modified by data about the user of the device.  '610 Patent at col. 19:17-29.  Independent claim 8 is identical to claim 7 except that at step (3), the interaction with the monitoring devices altering the map as a function of the data regarding locations is not modified by information about the user.  *Id*. at col. 19:30-42.  LBS alleges Niantic infringes claims 5, 9, 10, 11, 13, 14, 16, 17, 18, 21, 22, and 26.  It is unclear why LBS asserts claim 5, which depends on claim 1, but does not assert claim 1.  Indeed, in its opposition, LBS asserts claim 1, though an opposition brief is not the place to bring up new facts.  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("new" allegations contained in an opposition are irrelevant for Rule 12(b)(6) purposes, and a court may not consider them).

In any event, the Court considers claim 1, which is a computer system comprising

---

[7] Niantic applied its '648 Patent brick-and-mortar analogy to the '114 Patent.  Because the claims are almost identical, this is proper.  The difference between claim 1 of the patents is that the '114 Patent refers to location interaction rules *and* user interaction rules in the last clause.  This distinction does not make a difference in terms of finding claim 1 abstract.

(1) "a processor;" (2) "a memory coupled to the processor;" (3) "a receiver coupled to the processor;" (4) "a map display module coupled to the receiver and the memory, the map display module including a data store configurable to hold data related to one or more interaction rules associated with one or more locations in a predefined area and one or more identifiers;" and (5) "a status module configurable to determine a status associated with at least one of the one or more locations on the map, the status being a function of one or more location interaction rules associated with the at least one of the locations." '610 Patent at col. 18:41-55. Claim 1 is abstract because it is a generic means to build a generic computer capable of receiving a request for a map described in claim 1 of the '648 and '114 Patents. *See* Dkt. No. 35 at 20-22. The Court found claim 1 of both patents abstract, and does not find a claim applying an abstract idea to generic computer parts to be any less so. Claim 1 of the '610 Patent is patent-ineligible at step 2 of *Alice* for the same reason. *Intellectual Ventures I LLC v. Capital One Bank (NA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible.") (citing *Alice*, 134 S. Ct. at 2359-60)).

Neither party spends much time on the '610 Patent. The thrust of Niantic's abstract idea argument as to this patent is that the asserted claims are merely systems claims for implementing the method claims of the '648 and '114 Patents. Dkt. No. 35 at 20-22. LBS does not dispute this fact, *see* dkt. no. 46-1 at 23, and the Court agrees with Niantic's assessment. Thus, because the method claims in the '648 and '114 Patents have been found to be abstract, so too must systems claims 7 and 8 of the '610 Patent, which merely tack on circuitry to the method claims in the earlier-filed patents. Dkt. No. 35 at 22 (citing *Alice*, 134 S. Ct. at 2360 ("the system claims are no different from the method claims in substance.")). Thus, the Court finds the '610 Patent abstract.

Accordingly, at step 1 of *Alice*, the Court finds each of the asserted independent

claims of the '996, '648, '114, and '610 Patents to be directed to an abstract idea.[8]

**B.    *Alice* Step 2 – Do the Abstract Claims Contain an Inventive Concept?**

Having found the asserted patents abstract, the Court proceeds to *Alice* step 2, and considers the individual and ordered combination of the elements of each of the asserted claims "to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017).  Courts determine if the claims contain "any 'additional features'" constituting an inventive concept, even if the patents are directed to an abstract idea. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016), *cert. denied sub nom. Affinity Labs of Texas, LLC v. DIRECTTV, LLC*, 137 S. Ct. 1596, 197 L. Ed. 2d 736 (2017) (quoting *Alice*, 134 S. Ct. at 2357).  Such "additional features" must constitute more than "well-understood, routine, conventional activity."  *Id.* (quoting *Mayo*, 132 S. Ct. at 1298).

The Court summarizes the parties' arguments.  Niantic argues the patents fail at step 2 because they involve nothing more than a recitation of computer elements that merely perform their well-understood, routine, and conventional activities.  Dkt. No. 35 at 24 (citing *Content Extraction*, 776 F.3d at 1347-48).  Moreover, the patents do not provide any inventive solution to a problem arising in computerized mapping technology.  *Id.* at 26.  Conversely, LBS contends the patents do disclose an inventive concept, indicating whether a person can enter or traverse a location.  Dkt. No. 46-1 at 23.  Additionally, LBS argues, the patents solve a "specific technical problem," but that problem is not stated.  *Id.* at 24-25.

---

[8] Both parties discuss preemption, which is when a patent would preempt the use of the invention's "approach in all fields," and which would "effectively grant a monopoly over an abstract idea." *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010).  Because preemption is the "concern that undergirds [the] § 101 jurisprudence," courts have found it useful to consider it in determining patent validity. *Alice*, 134 S. Ct. at 2358, *Twilio*, 249 F. Supp. 3d at 1140-41.  Niantic argues the patents would preempt the field of displaying information about locations on a map.  Dkt. No. 35 at 24.  The Court considered this issue, but need not reach a finding because the absence of preemption does not signify patent eligibility. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2511 (2016).

**1.    Individual Claim Limitations**

**a.   The Individual Claim Limitations of the '996 Patent Disclose No Inventive Concept.**

**i.    Independent Claims**

None of the elements of claim 1, considered individually, amount to more than a "generic computer implementation" of those elements.  Claim 1 has three functions: (1) receiving a request, (2) determining a status based on rules about locations, and (3) generating a signal.  '996 Patent at col. 17:15-28.  Thus, these three elements involve the analysis of information and signaling of the results of that analysis.  These are "routine, generic computer functions."  *Twilio*, 249 F. Supp. 3d at 1149 (citing *Alice*, 134 S. Ct. at 2359).  The receiver of the generated signal is a "map display."  A map display receiving a map merely performs its routine and generic function.  The nail in the coffin to claim 1 is the fact that by LBS's own proposed construction of "display"—"electronic/electronically display"—it is clear that the only thing distinguishable about a map display is that it is electronic.  Dkt. No. 46-1 at 20 n.5.  The Court also considers LBS definition of "location interaction rule": "rules that can be correlated with data in a map display module."  *Id*.  But again, all "rules" are is information that can be analyzed by a computer, and so the only thing that is notable about LBS's construction of "location interaction rule" is that it "can be correlated with data" on a map display.  This brings the reader back to the fact all this claim implicates is using a generic computer to analyze and display location-related data.

Claim 19 is the apparatus claim for claim 1, and does not add an inventive concept merely by applying claim 1 to a "computer program product."  *Capital One Bank*, 792 F.3d at 1370 (citing *Alice*, 134 S. Ct. at 2359) ("Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility.").

**ii.   Dependent Claims**

LBS asserts infringement of dependent claims 2, 3, 5, 7, 8, 9, 12, 15, 22, 23, 24, 25, and 28.  Claims 2, 3, 5, 7 8, 9, 12, and 15 are dependent on claim 1, and claims 22, 23, 24, 25, and 28 are dependent on claim 19.

Claim 2 updates the status of locations, and signals that change to the display.  '996

Patent at col. 17:29-34. Updating data and generating a signal to indicate change is both a routine and conventional computer function. *DIRECTV*, 838 F.3d at 1262-63. Claim 3 takes the updating method of claim 2 and updates statuses based on data received from monitoring devices. '996 Patent at col. 17:35-40. Claim 5 supplements the updating method of claim 2, but the updated data includes interacting with a monitoring device to alter the map display based on information about the location, as modified by information about users. *Id.* at col. 17:52-57. Claims 3 and 5 add onto claim 2 by requiring data be received from monitoring devices (claim 3) and interacting with monitoring devices to alter the map (claim 5). Yet receiving data and interacting with devices is not inventive, nor is the use of a generic monitoring device. *See Fitbit, Inc. v. AliphCom*, 233 F. Supp. 3d 799, 812 (N.D. Cal. 2017) ("The various steps of transmitting or receiving information and how they are accomplished are also generic—the claims recite these steps only functionally and require no inventive algorithm or data structure for performing them."). Interacting with other generic display devices to update information about locations is not inventive, as wirelessly connected electronic devices generally have the capacity to interact. *See Rothschild Location Techs. LLC v. Geotab USA, Inc.,* No. 15-cv-682 RWS (JDL), 2016 WL 3584195, at *7 (E.D. Tex. Jan. 4, 2016), *report and recommendation adopted*, No. 15-cv-682 RWS (JDL), 2016 WL 2847975 (E.D. Tex. May 16, 2016) ("two computers communicating over a network is not inventive").

Claim 7 comprises receiving a request for a map, where the request includes an identifier and rules about whether that user may enter locations on the map. '996 Patent at col. 17:61-67. Yet adding additional data to be included in the request is not inventive. Claim 8 is directed to the method of claim 7, but includes rules regarding the permitted number of times and/or durations of visits to locations. *Id.* at col. 18:1-7. Claim 9 is also directed to the method of claim 7, and indicates on the map display whether the received user rules affect the map. *Id.* at col. 18:8-11. Both claims 8 and 9 simply add additional data to be considered in the map request or to be displayed on the map. *Elec. Power Grp.*, 830 F.3d at 1355 ("[M]erely selecting information, by content or source, for collection,

analysis, and display does nothing significant to differentiate a process from ordinary mental processes") Thus, neither of these claims disclose an inventive concept.

Claim 12 requires the map display be received via a wireless or unwired connection. '996 Patent at col. 18:29-34. The type of connection used for a map to be received is not relevant here. *Ultramercial*, 772 F.3d at 716 ("the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101."). Claim 15 generates a progress indicator signaling the user's progress on the map display. '996 Patent at col. 18:46-50. Yet generating a progress indicator is a routine and conventional computer function adding nothing to the patent's inventiveness. *DIRECTV*, 838 F.3d at 1262-63.

Claim 22 is the apparatus claim for claim 2. '996 Patent at col. 19:26-35. Claim 23 provides an instruction for the computer program to keep a copy of the map independent of the user. *Id*. at col. 19:36-39. Claim 24 is the apparatus claim for claim 7. *Id*. at col. 19:40-47. Claim 25 is the apparatus claim for claim 8. *Id*. at col. 19:48-54. Claims 22 through 25 do not save the patent for the same reason their corresponding method claims did not, the fact that the claims are implemented on a generic "computer program product" is irrelevant. Lastly, claim 28 describes instructions for generating a signal to illustrate details of a location. *Id*. at col. 20:13-19. The generation of unspecified instructions for generating a signal is not inventive.

### b. The Individual Claim Limitations of the '648 Patent Disclose No Inventive Concept.

#### i. Independent Claims

None of the claims elements in the '648 Patent, considered individually, amount to more than a "generic computer implementation" of those elements. The steps of claim 1 have three functions: (1) transmitting a request identifying the requester, (2) receiving a map at a display device, the locations on the map associated with rules about locations verifiable by a monitoring device, and (3) interacting with monitoring devices to alter the map based on rules. '648 Patent at col. 17:17-29. These are "routine, generic computer functions." *Twilio*, 249 F. Supp. 3d at 1149 (citing *Alice*, 134 S. Ct. at 2359). The receiver

of the map is a "map display." An electronic display receiving a map is performing its generic function, as is a monitoring device that monitors data. Also, there is no definition of what it means for data to be verifiable, or how verification would occur. This vague feature does not disclose an inventive concept. There is likewise no description of how the map is altered such to make the claim 1 inventive. The location interaction rules also do not save this claim because the rules are simply information about the locations on the map that can be analyzed by computers. Claim 19 is the apparatus claim for claim 1, and does not add an inventive concept merely by applying claim 1 to a "computer program product." *Capital One Bank*, 792 F.3d at 1370 ("Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility.").

### ii. Dependent Claims

LBS alleges infringement of claims 2, 3, 4, 6, 7, 10, 11, 13, 14, and 15 of the '648 Patent. Claims 2, 3, 4, 6, and 7 depend on claim 1, and claims 10, 11, 13, 14, and 15 depend on claim 9.

Claim 2 consists of the method of claim 1, receiving a location's "status" along with the requested map. '648 Patent at col. 17:30-32. Claim 3 includes the method of claim 2 where the display device a status, but also an illustration of that status. *Id*. at col. 17:33-39. While receiving additional information (claim 2) and an illustration of a location (claim 3) may be useful, it does not rise above merely displaying information. *Elec. Power Grp.*, 830 F.3d at 1355. Claim 4 includes the method of claim 2, and periodically updates statuses based on location rules. *Id*. at col. 17:40-45. Periodically updating data is a routine and conventional computer function. *DIRECTV*, 838 F.3d at 1262-63. Claim 6 requires transmitting the request in claim 1 over a wireless network. '648 Patent at col. 17:57-62. Claim 7 requires the request described in claim 6 be transmitted "via at least one of a wireless LAN (WLAN), and IEEE 802 type wireless network, a Bluetooth type wireless network, and/or a satellite network." *Id*. at col. 17:63-67. Claims 6 and 7 add nothing inventive by requiring a request be transmitted by a specific type of connection. *See Ultramercial*, 772 F.3d at 716.

Claim 10 supplements claim 9 by stating it "comprises" "a recordable medium." '648 Patent at col. 18:20-22. But this claim merely adds hardware to claim 9, claim 1's apparatus claim, adding nothing of substance to the patent. Claim 11 adds to claim 9 by including an instruction for receiving the map at the display device that includes obfuscation of icons or metadata. *Id*. at col. 18:23-33. But all this claim does is provide a "post-solution activity." *Mayo*, 566 U.S. at 73 (a patentee cannot circumvent the prohibition against patenting abstract ideas by "adding insignificant postsolution activity" (citation omitted)). This is because, based on the information about the locations received at the display device in response to the request for information, the map already indicates that a user may enter a location on the map. The "obfuscation of icons" is extraneous.

Claim 13 is the apparatus claim of claim 6. *Id*. at col. 18:44-50. Claim 14 is the apparatus claim of claim 7. *Id*. at col. 18:51-57. Claims 13 and 14 do not save the patent for the same reason their corresponding method claims do not. Lastly, claim 15 adds to claim 9 by including an instruction for receiving an indication that "user interaction rules" affect the map. *Id*. at col. 18:58-67. LBS defines "user interaction rules" as "user specific rules stored in a data store that applies to a user and not a location." Dkt. No. 46-1 at 20 n.5. Based on the Court's earlier construction of the term "rule," a location interaction rule is nothing more than stored information about a user that can be analyzed by a computer. Like several of the other claims of the '648 Patent, claim 15 also does not add an inventive concept to the patent because it merely provides instructions for a computer program to indicate whether user-related information affects the map. The claim consists of analyzing data and signaling its effect.

### c. The Individual Claim Limitations of the '114 Patent Disclose No Inventive Concept.

#### i. Independent Claim

Claim 1 of the '114 Patent describes a "method" for a display device to receive a map. This method consists of: (1) transmitting a request for a specific location, with the request identifying the user of the device, (2) receiving a map, the locations on the map

associated with rules about locations that are verifiable by a monitoring device, and (3) interacting with monitoring devices to alter the map on the device based on rules regarding the locations, as modified by rules regarding the user. '114 Patent at col. 17:42-55. As noted in the abstract idea analysis, this claim is almost identical to claim 1 of the '648 Patent. Claim 1 of this patent adds onto that claim by including interactions with monitoring devices that are functions of location interaction rules *modified by user interaction rules specific to a user*. Even so, claim 1 merely involves "routine, generic computer functions," *Twilio*, 249 F. Supp. 3d at 1149 (citing *Alice*, 134 S. Ct. at 2359), and generic computer parts performing their routine functions. As twice noted, there is also no definition of what "verification" means or how it would occur.

### ii. Dependent Claims

LBS asserts Niantic infringes claims 4, 5, 6, 7, 13, and 17 of the '114 Patent, all of which depend on claim 1.

Claim 4 adds to claim 1 by adding that the request for a map be transmitted over a wireless network. '114 Patent at col. 18:9-15. Claim 5 requires the request over a wireless network be transmitted "via at least one or a wireless LAN (WLAN), an IEEE 802 type wireless network, a Bluetooth type wireless network, or a satellite network." *Id.* at col. 18:16-20. Merely disclosing that a request be transmitted by a specific type of connection is insufficient. *See Ultramercial*, 772 F.3d at 716. Claims 4 and 5 add no inventive concept to the '114 Patent. Claim 6 adds to claim 1 by requiring that an indication be received on the map regarding whether user-related rules affect the map. '114 Patent at col. 18:21-28. Like other claims asserted in this case, this claim merely requires receipt of a signal indicating the results of data analysis. *Elec. Power Grp.*, 830 F.3d at 1355.

Claim 7 adds to claim 1 by clarifying that the map must be received at the display device. '114 Patent at col. 18:29-38. This specification of hardware adds nothing inventive to the patent. Claim 13 supplements claim 1 by requiring the map received include at least one location associated with an amount of time a user is permitted to stay there. *Id.* at col. 19:1-8. Having a location on the map that includes a timer for how long

the user may be at that location does not disclose an inventive concept, it is just an additional data point included in the receipt of the map. Claim 17 requires the interaction with the monitoring device visually alter the map based on rules about locations and users. *Id.* at col. 20:6-15. Based on the Court's earlier construction of "rules," all this claim entails is that the interaction with the generic monitoring device alters the map based on analysis of user and location data. This claim alters data to be displayed on the map, *i.e.*, data is analyzed and is updated. That is what computers do. *DIRECTV*, 838 F.3d at 1262-63 (generic computer implementation of an abstract idea does not confer patent eligibility).

### d. The Individual Claim Limitations of the '610 Patent Disclose No Inventive Concept.

#### i. Independent Claims

Claim 7 describes a "system for receiving a map through a predefined area on a device." The system consists of (1) circuitry for transmitting a request for a map that includes an identifier for the device's user, (2) circuitry for receiving the map where at least one of the locations are associated with data that may be verified by a monitoring device, and (3) circuitry for interacting with monitoring devices that alter the map as a function of the data regarding locations, as modified by data about the user of the device. '610 Patent at col. 19:17-29. Claim 8 is identical to claim 7 except that at step (3), the interaction with the monitoring devices does *not* include a modification by information about the user. *Id.* at col. 19:30-42.

The Court based its *Alice* step 1 analysis of the '610 Patent on the fact that the independent claims of this patent were merely apparatus claims for other asserted patents, i.e., the independent claims of the '610 Patent were merely the application of claims 1 of the '648 and '114 Patents using "circuitry." *Compare* '610 Patent col. 19:17-42 (claims 7 and 8) *with* '114 Patent at col. 17:42-55 (claim 1) *and* '648 Patent at col. 17:17-29 (claim 1). That the patent consists of generic "circuitry" as opposed to a specific *type* of circuitry that is particularly inventive, or circuitry that is *arranged in an original manner*, leads the Court to find that inserting the words "circuitry for" discloses no inventive concept. *See*

*Elec. Power Grp.*, 830 F.3d at 1355 (the claims "do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." (quoting *Bascom*, 827 F.3d at 1349-52)). The individual elements of claims 7 and 8 do not add features to the abstract idea that disclose an inventive concept.

### ii.    Dependent Claims

LBS alleges Niantic infringes claims 5, 9, 10, 11, 13, 14, 16, 17, 18, 21, 22, and 26 of the '610 Patent.  Except for claim 5, all of the asserted claims depend on claim 8.

Claim 5 adds to claim 1, which was not asserted, by adding to it a transmitter coupled to the claimed processor in claim 1, where the transmitter is configurable to the display device, and the display device is able to request a map display.  '610 Patent at col. 19:7-11.  But neither claim 1 nor claim 5 disclose anything except generic computer components performing their routine and conventional function of analyzing, transmitting, and holding data.  *See Elec. Power Grp.*, 830 F.3d at 1355.

Claim 9 supplements claim 8 by requiring circuitry for receiving data associated with locations on the map.  '610 Patent at col. 19:43-45.  Claim 10 adds to claims 8 and 9 by requiring circuitry for receiving data regarding illustrating location detail.  *Id*. at col. 19:46-51.  Claim 11 also adds to claims 8 and 9 by requiring that the circuitry for receiving the data regarding locations include circuitry that allows for periodically updating such data.  *Id*. at col. 19:52-57.  These claims describe generic circuitry for performing the function of collecting data regarding locations and updating such data.  For the reasons that these functions were not found to be inventive in the method claims for the '996, '648, and '114 Patents, these dependent claims of the '610 Patent also disclose no inventive concept.

Claim 13 requires circuitry for wirelessly transmitting the request for a map.  '610 Patent at col. 20:1-6.  Claim 14 requires that the circuitry for transmitting the request over a wireless network be transmitted "via at least one or a wireless LAN (WLAN), an IEEE

802 type wireless network, a Bluetooth type wireless network, or a satellite network." *Id.* at col. 20:7-13. As noted thrice above, merely disclosing that a request be transmitted by a specific type of connection does not add anything unconventional to the patent, even with the addition of generic "circuitry." *See Ultramercial*, 772 F.3d at 716.

Claim 16 adds to claim 8 by requiring circuitry for receiving the map at the display device. '610 Patent at col. 20:19-28. Claim 17 expands on claim 8 by requiring that the circuitry for transmitting the request for a map include circuitry for transmitting an identifier associated with the display device. *Id.* at col. 20:29-34. For the same reasons as above, adding generic circuitry for *receiving* a map does not disclose an inventive concept. Claim 18 adds to claim 8 by requiring circuitry for transmitting at least one GPS location associated with the display device. *Id.* at col. 20:35-40. Nothing inventive here.

Claim 21 requires circuitry for transmitting a request for the map to a server, and the server having the capacity to relay data between display devices. *Id.* at col. 20:54-62. But this claim does not seek to cover the method claim for this feature, because it merely requires undescribed "circuitry" that has the capability of peer-to-peer communication. As such, this claim does not contain an "additional feature" that makes an abstract idea patent-eligible. *DIRECTV, LLC*, 838 F.3d at 1262. Claim 22 supplements claim 8 by requiring circuitry for receiving traffic conditions associated with at least one location in the predefined area. '610 Patent at col. 20:63-21:2. Lastly, claim 26 adds to claim 8 by requiring circuitry for receiving data about whether another user has been at a location. *Id.* at col. 21:23-31. Claims 22 and 26 do nothing except facilitate the data transfer. *See Elec. Power Grp.*, 830 F.3d at 1355.

### 2. The Ordered Combination of Claim Limitations Discloses No Inventive Concept.

Upon prompting by the Court, counsel for LBS stated at the hearing that the problem that was solved by the inventions, and that thus made the four patents inventive is that they "improve[e] the functionality of an electronic map" by indicating whether a person can traverse a location through the use of rules. November 8, 2017 Hearing.

Revealingly, there is no argument in the opposition to Niantic's motion regarding *how* the ordered combination of the claim limitations in the asserted patents discloses an inventive concept. LBS attempts to use *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC* to support its argument that the ordered combination of the of the claim limitations make the asserted patents eligible for patent protection. 827 F.3d 1341 (Fed. Cir. 2016).

In *Bascom*, the asserted patent disclosed a technical improvement over the prior art method of filtering Internet content through its particular arrangement of elements. *Id.* at 1350. The Court's finding of patentability was specifically premised on the fact that the combination of elements improved an existing technological process. *Id.* at 1351. In *X One v. Uber Technologies, Inc.*, the court found the asserted patent to be patent-eligible for the same reason. The court there considered the technology in existence at the time of the invention, and that the patent specification pointed to specific problems with the existing state of the art and its solution to those problems. 239 F. Supp. 3d at 1197.

Here, there is no reference to any existing technology that the asserted patents improve on, or that the asserted patents solve any existing problem. *Concaten*, 131 F. Supp. 3d at 1177 (pointing out that while the plaintiff argued it improved an existing technological process, the plaintiff did not point "to any problem in the existing process that the industry has been unable to solve."). As to the '996 Patent, LBS argues that each of the dependent claims are limitations that "delineate technical solutions of the invention, adding to the inventive concept of the '996 Patent requiring either user specific rules in addition to location specific rules . . . , interaction with monitoring devices . . . , or emphasizing the real-time networked nature of the inventions." Dkt. No. 46-1 at 27. This statement is unintelligible. The Court cannot determine what problem is being solved. A patent does not disclose an inventive concept merely by claiming it is so.

If LBS's purported improvement is to "the functionality of an electronic map" through the use of location and user specific rules, the Court is highly skeptical of the four asserted patents. Essentially, the user interaction rules provide specific rules about what a user is allowed to do, and the location interaction rules provide rules, or data about the

locations on the map. This does not go past the abstract idea category because there is nothing that limits the patents.

The independent claims of the '996, '648, and '114 Patents are directed to data collection and processing, or interacting with generic monitoring devices, and do not place limitations on the patents, or describe a specific improvement in the functionality of an electronic map.

The Federal Circuit's discussion of ends sought and the means of achieving them in *Electric Power Group* is germane here. There, the court agreed with the lower court's finding that the patent holder sought to "patent the abstract idea of a solution to the problem in general," rather than "patenting a particular concrete solution to a problem." *Elec. Power Grp.*, 830 F.3d at 1356. Claim 1 of the '996 Patent seeks to patent the solution of displaying on electronic maps whether a person can visit a location based on data about that location. Similarly, claim 7 of the '996 Patent comprises receiving an identifier associated with a user that reveals whether the user is permitted to visit locations on the map. '996 Patent at col. 17:61-67. But how is the issue of whether a user is permitted a traverse determined under a location interaction rule? How is the identifier generated or received? The same is true of claim 2, which periodically updates the status associated with a map location. *Id*. at col. 17:29-35. How is this updating done? How would an inventor who wanted to update information about a location on a map *not* run afoul claim 2? That is the problem with the '996 Patent. *Elec. Power Grp.*, 830 F.3d at 1356 ("Whereas patenting a particular solution would incentivize further innovation in the form of alternative methods for achieving the same result . . . allowing claims like Electric Power Group's claims here would inhibit innovation by prohibiting other inventors from developing their own solutions to the problem without first licensing the abstract idea." (citation, quotation marks, and brackets omitted)). LBS seeks to patent the abstract solution to an abstract idea.

LBS gives short shrift to the rest of the patents at step 2. There is no argument that the ordered combination of the claims disclose an inventive concept. As to the '648

Patent, LBS argues that the claims limitations "illuminate" the inventive concept of the patent, but does not explain why. LBS reiterates the asserted dependent claims and tacks on the word "inventive." Dkt. No. 46-1 at 27-28. But as the Court already discussed in its analysis of the individual claim elements, above, claim 1 of the '648 is impermissibly vague on how a map is altered or information verified, such that the combination of those non-specific elements discloses no inventive concept. As to the '114 Patent, LBS argues the dependent claim limitations "further illuminate" that invention is "directed [to] receiving a map altered based on an identifier of the display device, user interaction rules, and information received from monitoring devices." *Id.* at 28. "But merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas." *Elec. Power Grp.*, 830 F.3d at 1355; *id.* at 1351 ("The claims, defining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101."). As in *Electric Power Group*, the claims in the '114 Patent do not require a "new source or type of information, or new techniques for analyzing [the information]," or some inventive programming, such that the abstract idea of information collection and analysis is transformed into an inventive concept. *Id.* at 1355.

Lastly, as to the '610 Patent, LBS argues that an inventive concept is disclosed by the patent's "computer systems for altering a map display based on location interaction rules and/or user interaction rules in combination with data received from monitoring devices and/or other user display devices." Dkt. No. 46-1 at 29. Yet all the '610 Patent adds to this case is generic "circuitry" performing data transfers.

## IV. CONCLUSION

Because the Court finds that each of the asserted patents is directed to an abstract idea and discloses no inventive concept, the Court GRANTS Niantic's motion to dismiss. The asserted patents are not patent-eligible. Because this is not a deficiency that may be cured by amendment, the Court DISMISSES WITH PREJUDICE LBS's amended

complaint.  *See e.g.*, *Open Text S.A. v. Alfresco Software Ltd*, No. 13-cv-04843 JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) (granting motion to dismiss under *Alice* with prejudice); *Cardpool*, 2013 WL 245026 (same).  The Court will enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  December 19, 2017



NATHANAEL M. COUSINS
United States Magistrate Judge